Millard J. SOILEAU, et al.

v.

Howard ZERANGUE, Individually and as Sheriff of St. Landry Parish, La.

Civ. A. No. 81–0855.

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

Dec. 28, 1982.

**846**

Anthony G. Terracina, Dwight Reed, Opelousas, La., for plaintiffs.

Frank P. Trosclair, Jr., Opelousas, La., Emile C. Rolfs, III, Baton Rouge, La., for defendants.

OPINION

SHAW, District Judge.

The plaintiffs in this action are eight former deputies of the St. Landry Parish Sheriff's Department. The defendant is the incumbent sheriff, Howard Zerangue. Plaintiffs brought this action under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 alleging that Sheriff Zerangue violated their civil rights under the First and Fourteenth Amendments to the United States Constitution when he did not reappoint them as deputy sheriffs after he was elected sheriff of St. Landry Parish.

### Background

On October 27, 1979, Howard Zerangue was elected sheriff of St. Landry Parish, Louisiana. Although the election was held in October, Sheriff-elect Zerangue did not assume office until July 1, 1980. Approximately two weeks before assuming office, Zerangue issued a list of seventy-three persons whom he wished to have commissioned as deputy sheriffs. Among those who were then serving as deputies under outgoing Sheriff Adler Ledoux, but whose names did not appear on the Zerangue list, were the eight plaintiffs in this action: Millard Soileau, Dalbot Hebert, D.J. Speyrer, Frank Pepitone, Whitney Cropper, Edward Harris, Jr., Joel Marks and Amos Fontenot.

### The Plaintiffs

A. Plaintiff Millard Soileau was one of six unsuccessful candidates who ran against Howard Zerangue in the 1979 sheriff's election. Soileau had been involved in law enforcement since 1949, and had made a previous unsuccessful bid for sheriff in 1969. After losing the 1979 election to Zerangue, Soileau asked outgoing Sheriff Adler Ledoux to issue to him a deputy sheriff's commission. In November of that year, approximately eight months before Zerangue assumed office, outgoing Sheriff Ledoux commissioned Soileau and appointed him purchasing agent for the sheriff's department. As purchasing agent, Soileau aided in the procurement of food for prisoners held in the parish jail. When Sheriff

Zerangue assumed office on July 1, 1980, he did not renew Soileau's deputy commission.

B. Plaintiff Dalbot Hebert was also an unsuccessful candidate in the 1979 sheriff's election. He began working for the sheriff's department in August of 1972, serving first as a levee patrolman and then as head of rescue operations. Although classified as a detective, his primary duties consisted of searching for drowning victims and maintaining the department's rescue equipment. He also aided in prisoner transfers and occasionally served as Sheriff Ledoux's driver. After Hebert's commission expired on June 30, 1980, Sheriff Zerangue did not renew it.

C. Plaintiff D.J. Speyrer spent twenty-two months as a sheriff's deputy under Adler Ledoux serving as Chief of Patrol Division with the rank of Captain. In this capacity he had supervisory control over all road patrolmen in St. Landry Parish. His responsibilities included preparation of route sheets and work assignments, and insuring that patrol cars were clean and fully equipped. Speyrer also did some work in the radio office and occasionally aided in the transportation of criminal evidence and prisoners. During the 1979 sheriff's election Speyrer was an active supporter of candidate Lincoln Savoy, attending two banquets held in Savoy's honor. When Sheriff Zerangue assumed office on July 1, 1980, he did not renew Speyrer's commission. Speyrer has not worked since then.

D. Plaintiff Frank Pepitone joined the sheriff's department in 1971, and was assigned to the civil division as a process server. His duties included serving legal papers and seizing property. Although not an active campaigner, Pepitone did openly support Lincoln Savoy for sheriff in the 1979 sheriff's election. When Sheriff Zerangue assumed office on July 1, 1980, Pepitone's commission was not renewed. He had three years of service left before retirement.

E. Plaintiff Whitney Cropper had been a deputy sheriff for six years under Sheriff Adler Ledoux when his commission expired. During approximately the last eighteen months of his service, he was assigned to guard duty in a local food stamp office. In the 1979 sheriff's election, Cropper supported candidate Millard Soileau. When his commission expired on June 30, 1980, Sheriff Zerangue did not renew it.

F. Plaintiff Edward Harris, Jr., was a deputy sheriff of St. Landry Parish for over seven years under Adler Ledoux. He originally worked as a detective handling criminal investigations on assignment, but later served as the department's juvenile officer. He also worked for the St. Landry Parish District Attorney, functioning as a liaison and coordinator of affairs between the sheriff's department and the district attorney's office. During the 1979 sheriff's election, Harris was an outspoken supporter of candidate Lincoln Savoy. When his commission expired on June 30, 1980, Sheriff Zerangue did not renew it.

G. Plaintiff Joel Marks joined the sheriff's department in 1979. He had no prior law enforcement experience having run an ice cream and sandwich shop for the previous twenty years. Originally he was assigned duties as a jailer. In January of 1980, he was transferred to the booking desk and given the title of Assistant Warden. His duties included booking and releasing prisoners and supervising the jailers working on his shift. When Sheriff Zerangue assumed office on July 1, 1980, he did not renew Marks' commission.

H. Plaintiff Amos Fontenot began working for the sheriff's department approximately five months before Sheriff Zerangue assumed office. During that period of time he served as a jailer charged with the guarding and feeding of prisoners. During the 1979 sheriff's election, Fontenot supported candidate Millard Soileau. When his commission expired on June 30, 1980, Sheriff Zerangue did not renew it.

*The Complaint*

On May 15, 1981, the plaintiffs brought this action alleging that Sheriff Zerangue violated their civil rights under the First and Fourteenth Amendments to the United States Constitution when he failed to reap-

point them as deputy sheriffs. Specifically, plaintiffs contend they "were discharged solely on the ground of their political beliefs or their failure to support ... [Sheriff] Zerangue in the Sheriff's election..." (Plaintiffs' Complaint # 12), and that "... [p]ersons who supported or contributed to the campaign of ... [Sheriff] Zerangue were given job preference over those who did not." (Plaintiffs' Complaint # 13). Plaintiffs seek "... reinstatement, back wages, promotions, attorney fees, court costs, retirement benefits, fringe benefits, and damages of ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS..." (Plaintiffs' Complaint # 15).

### The Law

A brief review of the controlling legal principles will provide some perspective on plaintiffs' claims. Under Louisiana law the relationship between a sheriff and his deputies is not that of employer and employees, but is that of appointor and appointees. *Kyles v. Calcasieu Parish Sheriff's Department,* 395 F.Supp. 1307 (W.D. La.1975); LSA–R.S. 33:1433(A). Appointed deputies, though viewed as public officers, have no statutorily prescribed term of office and serve solely at the pleasure of the sheriff. *Boyer v. St. Amant,* 364 So.2d 1338 (La.App. 4th Cir.1978); *Potts v. Morehouse Parish School Board,* 177 La. 1103, 150 So. 290 (1933). Their tenure as deputies cannot exceed the term of the sheriff who appointed them, and upon the election of a new sheriff they must be reappointed and recommissioned to retain their positions.

LSA–R.S. 33:1433(A) grants each sheriff the power to appoint as many deputies as are necessary for the proper functioning of his office, but not more than authorized by law. A sheriff is free to appoint as deputies whomever he wishes and has no legal obligation to reappoint and recommission those deputies who served under his predecessor. Nevertheless, a newly-elected sheriff cannot, under the Constitution, refuse to reappoint a deputy merely because that deputy did not support him in the election or openly supported an opposing candidate. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). To do so would constitute an infringement of the freedoms of speech and association guaranteed to every person by the First and Fourteenth Amendments to the United States Constitution. This is so notwithstanding that under Louisiana law a deputy has no legal or contractual right to continued employment. As stated in *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570, 577 (1972):

> "... even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interests in freedom of speech. For, if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' *Speiser v. Randall,* 357 U.S. 513, 526, 2 L.Ed.2d 1460, 1473, 78 S.Ct. 1332 [1342]. Such interference with constitutional rights is impermissible."

Stated simply, the nonrenewal of a deputy sheriff's commission may not be predicated on that deputy's exercise of his First and Fourteenth Amendment rights of free speech and association.

### Burden of Proof

In this action it was incumbent upon the plaintiffs to establish that impermissible political animus was a substantial motivating factor behind Sheriff Zerangue's decision not to reappoint them. *Barrett v. Thomas,* 649 F.2d 1193, 1200 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982); *Tanner v. McCall,* 625 F.2d 1183, 1190 (5th Cir.1980), *cert. denied,*

451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). They failed to do so.

Testimony at trial revealed that prior to assuming office, Sheriff-elect Zerangue held meetings with top officials of the St. Landry Parish Sheriff's Department. Among those persons with whom he met were W.G. Speyrer, chief deputy of the tax and civil divisions of the sheriff's department, and Buzz Andersen, the department's financial consultant.

At these meetings Zerangue learned that the financial outlook for the sheriff's department was bleak. Although outgoing Sheriff Adler Ledoux would leave behind a surplus exceeding $180,000.00, monthly expenditures had begun to exceed incoming revenues by substantial amounts. Zerangue was informed that if this trend continued the surplus would be totally depleted and the sheriff's department would be operating at an overall deficit within eighteen months. Both Speyrer and Andersen advised Zerangue that the most feasible area in which overhead could be substantially reduced was salary expenditures. During Adler Ledoux's last year in office, sixty-seven percent of total expenditures was devoted to salaries. In Chief Deputy Speyrer's opinion this was much too large a percentage. The final recommendation to Zerangue was to decrease salary expenditures by reducing the number of deputies working at the sheriff's department.[1] Acting upon this advice, Zerangue evaluated the personnel and operations of the sheriff's department and instigated an overall reduction in total work force focusing mainly on those operational areas he felt were overstaffed or unnecessary.

For example, under the administration of Adler Ledoux the sheriff's department employed nineteen jailers. Among those nineteen were plaintiffs Marks and Fontenot. When Sheriff Zerangue assumed office he reduced the number of jailers from nineteen to twelve.[2]

Under Adler Ledoux the sheriff's department assigned one deputy to work exclusively as a juvenile officer. That deputy was plaintiff Edward Harris, Jr. When Sheriff Zerangue assumed office he eliminated the position of juvenile officer and directed that all juvenile matters be handled by the detective division. At the same time he reduced the number of detectives employed by the sheriff's department from eleven to eight.

Under the administration of Adler Ledoux the purchasing of food for prisoners was assigned to a deputy in the position of jail purchasing agent. That deputy was plaintiff Millard Soileau. When Sheriff Zerangue assumed office he eliminated the position of jail purchasing agent after determining the position was not needed. The purchasing of food for prisoners is now handled by the sheriff himself.

Under the administration of Adler Ledoux one deputy was assigned almost exclusively to the department's rescue unit. That deputy was plaintiff Dalbot Hebert. Hebert's main duties consisted of searching for drowning victims and maintaining the department's rescue equipment which was kept at Hebert's home. When Sheriff Zerangue assumed office he eliminated Hebert's position. No longer is one deputy assigned exclusively to the rescue unit. The department's rescue equipment is now dispersed throughout the parish and each deputy is expected to take part in rescue operations in his work area.

Finally, under the administration of Adler Ledoux, plaintiff D.J. Speyrer served as Chief of Patrol Division. His immediate superior was Chief Administrative Officer Lincoln Savoy. Speyrer's primary duties as Chief of Patrol Division involved supervising, coordinating and dispatching all patrol personnel in conformity with written departmental policy established by Mr. Savoy.

1. Chief Deputy W.G. Speyrer testified that had Zerangue not reduced salary expenditures the department would have incurred a deficit of approximately $100,000.00 during the first year of his administration.

2. Since Zerangue assumed office the number of jailers has increased from twelve to fifteen.

When Sheriff Zerangue assumed office he combined the supervisory and policy-making functions of deputies Savoy and Speyrer, thereby creating a wholly new position. In other words, the positions of Chief of Patrol Division and Chief Administrative Officer were eliminated by consolidation into a single position. That position is currently held by deputy Milton Hargroder.

Other steps taken by Sheriff Zerangue to reduce departmental overhead included reducing the number of patrolmen from twenty-four to twenty-one, the number of bailiffs from six to three, the number of jail cooks from four to three, the number of civil process servers from four to three and the number of criminal process servers from four to two.[3] The position of officer in charge of youth programs was completely eliminated.

It is apparent to the Court that Sheriff Zerangue was engaged in a good faith effort to improve the fiscal condition of the sheriff's department.[4] Plaintiffs presented no evidence indicating that Sheriff Zerangue accomplished these work force reductions through the wholesale discharge of non-supporters. To the contrary, testimony at trial established that upon assuming office Sheriff Zerangue reappointed and recommissioned approximately fourteen deputies who did not support him in the election. This is hardly consistent with plaintiffs' claim that Sheriff Zerangue engaged in "house cleaning" when he assumed office. (Plaintiffs' Complaint # 15).

■ In light of this evidence, the Court is convinced that political retribution was not the motivating factor behind Sheriff Zerangue's decision not to reappoint Marks, Fontenot, Harris, Soileau, Hebert and Speyrer. Their positions were simply elimi-

nated in an effort to reduce departmental overhead by decreasing salary expenditures. Such action did not violate the civil rights of these plaintiffs. Thus, the claims of plaintiffs Joel Marks, Amos Fontenot, Edward Harris, Jr., Millard Soileau, Dalbot Hebert and D.J. Speyrer are rejected as being without merit.

The two remaining claimants are Frank Pepitone and Whitney Cropper. Unlike the other plaintiffs, Pepitone and Cropper were not employed in positions that were eliminated by Sheriff Zerangue. Their commissions were simply not renewed and two men, Eddie Ledoux and Terry Doucet, were appointed to take their places. Both plaintiffs claim they were replaced because they did not support Sheriff Zerangue in the sheriff's election. Sheriff Zerangue denies this claiming that he did not think either of the plaintiffs wanted to remain with the department. The Court will address the claims of Cropper and Pepitone separately.

■ Plaintiff Whitney Cropper worked as a guard in a local food stamp office. When his commission expired on June 30, 1980, Sheriff Zerangue did not renew it and appointed Eddie Ledoux to take his place. On cross-examination, Sheriff Zerangue explained why this was done. He stated:

"I have all the respect in the world for Mr. Cropper. I think he's a wonderful man. But, the man does have age on him, and in all sincerity, I was in the opinion the man was in the process of retiring, and the man never at one time ... [n]ever at one time did the man ask me to go to work or never at one time did the man indicate he was interested in working, and I'm being very honest with you. I really and truly felt the man was ready to retire."

3. By September of 1982, Zerangue had further reduced the number of jail cooks from three to two. However, he had increased the number of patrolmen from twenty-one to twenty-six and the number of baliffs from three to four. It should be noted that in addition to decreasing the number of full-time deputies, Sheriff Zerangue has also lowered the number of automobiles maintained by the department from thirty-seven to thirty. Evidence adduced at tri-

al indicated that the procurement and maintenance of automobiles was the second largest item of departmental overhead behind salary expenditures.

4. Because of the actions taken by Sheriff Zerangue the department is no longer operating at a deficit. In fact, the accumulated surplus has grown from approximately $180,000.00 to in excess of $311,000.00.

Cropper presented no evidence that would cast doubt on this explanation. He had the burden of establishing that impermissible political animus was a substantial motivating factor behind Sheriff Zerangue's decision not to reappoint him. In attempting to carry that burden he established only two facts. First, he established that he supported a candidate other than Zerangue in the 1979 sheriff's election. Second, he established that he was not reappointed when Zerangue assumed office. These two facts, standing alone, do not support an inference that Zerangue's actions were politically motivated. *Tanner v. McCall,* supra at 1193, 1194. No other evidence was presented that would even remotely support his claim.[5]

As Sheriff Zerangue pointed out, when he assumed office Cropper was sixty-six years old. Although Cropper testified that he had no intention of retiring and had hoped to be reappointed, he admitted on cross-examination that he never once made this known to Sheriff Zerangue.[6] Given his age and his failure to express any interest in remaining with the department, the Court cannot say that it was unreasonable for Zerangue to conclude that Cropper was retiring. In the absence of evidence to the contrary the Court must accept Sheriff Zerangue's explanation. Thus, because Cropper has failed to establish that impermissible political animus played any part in Sheriff Zerangue's decision not to reappoint him, his claim, like those of plaintiffs Marks, Fontenot, Harris, Soileau, Hebert and Speyrer, is rejected as being without merit.

The final claim is that of plaintiff Frank Pepitone. Prior to Sheriff Zerangue's election as sheriff, Pepitone worked as a process server for the civil division of the sheriff's department. He had served in that capacity since 1971, serving legal papers and seizing property. Evidence presented at trial revealed that Pepitone was a conscientious worker who performed his job assignments in a professional and competent manner. He had never received any departmental reprimands and no complaints were ever received concerning his work performance. Nevertheless, when Sheriff Zerangue assumed office on July 1, 1980, he did not renew Pepitone's commission and appointed Terry Doucet to take his place.[7] At trial Zerangue explained why this action was taken. He testified that on two different occasions he asked Pepitone to come speak with him about remaining with the department; that despite these overtures, Pepitone never came to talk with him; and, thus, he concluded that Pepitone was not interested in remaining with the department.

Pepitone presented no evidence to contradict this explanation. On cross-examination he admitted that he had spoken with Zerangue prior to the election. He admitted that Zerangue wanted to meet with him to discuss the possibility of his remaining with the department; and he admitted that, despite these overtures, he never once attempted to contact Zerangue to express his interest in being reappointed.

In light of these admissions, the Court cannot say that Zerangue's explanation is unfounded. The law does not impose upon a newly-elected sheriff the obligation to seek out each of the deputies who served under his predecessor to determine their interest in remaining with the department. He can reasonably assume that anyone interested in serving under his administration will contact him. The evidence in this case

---

**5.** For example, no evidence was introduced to establish which candidate Eddie Ledoux supported in the sheriff's election.

**6.** On cross-examination the following exchange occurred between Cropper and counsel for Zerangue: "Q. You testified earlier that no one contacted you on behalf of Sheriff Zerangue or Mr. Zerangue when he was running for election? A. No. Q. And no one ever told you

you better support him or you wouldn't have a job? A. No. Q. Did you ever contact Mr. Zerangue personally between the time he won the election and the time he took office to ask him to keep you on as a deputy? A. No."

**7.** No evidence was introduced to indicate which candidate Terry Doucet supported in the sheriff's election.

indicates that had Pepitone contacted Zerangue and made known his desire to be reappointed, he might well have been retained.[8]

The burden was on Pepitone to establish that impermissible political animus was a substantial motivating factor behind Zerangue's decision not to reappoint him. He failed to carry that burden. Therefore, his claim, like the claims of the other plaintiffs, is rejected as being without merit.

### Conclusion

When Sheriff Zerangue assumed office he took control of a department that was overstaffed and financially troubled. In a move toward reducing departmental overhead, he instigated an overall reduction in total work force. Plaintiffs Marks, Fontenot, Harris, Soileau, Hebert and Speyrer were not reappointed because their positions were eliminated. Fiscal responsibility, rather than politics, resulted in the nonrenewal of their commissions.

Plaintiffs Cropper and Pepitone simply made no effort to be reappointed and Sheriff Zerangue justifiably concluded that they were not interested in serving under his administration. No impermissible political animus was involved.

In summary, the plaintiffs, individually and collectively, failed to establish that impermissible political animus was a substantial motivating factor behind the nonrenewal of their deputy commissions. Having failed to carry the burden of proof imposed upon them by law, their claims must be rejected.

Accordingly, all claims of plaintiffs Millard Soileau, Dalbot Hebert, D.J. Speyrer, Frank Pepitone, Whitney Cropper, Edward Harris, Jr., Joel Marks and Amos Fontenot are hereby DENIED.

8. The same can be said of plaintiff Whitney Cropper. Had he contacted Sheriff Zerangue and made known his desire to be reappointed, he might be a deputy today.