Rachel SMITH, et al.

v.

PARISH OF WASHINGTON, et al.

No. Civ.A. 02–3385, Civ.A. 02–3392.

United States District Court,
E.D. Louisiana.

March 26, 2004.

Dale Edward Williams, Attorney at Law, Metairie, LA, for Plaintiffs.

Eavelyn Terry Brooks, Bastian & Brooks, Lloyd Frederick Schroeder, II, Usry, Weeks & Matthews, New Orleans,

**370**

LA, Dale E. Branch, District Attorney's Office, Franklinton, LA, Charles M. Hughes, Jr., Talley, Anthony, Hughes & Knight, LLC, Mandeville, LA, for Defendants.

## ORDER & REASONS

FALLON, District Judge.

The Plaintiffs in these consolidated actions are six former deputies of the Washington Parish Sheriff's Office: Rachel Smith, William Jones, William Stogner, Michael Dufrene, Michael Thomas, and Michael Daniel. All six Plaintiffs bring suit against the sheriff of Washington Parish, Aubrey Jones, and the deputy sheriff, Charles Brumfield, alleging retaliatory discharge. (Civil Action No. 02–3385). One of the six Plaintiffs, Michael Dufrene, also filed a separate suit against the Town of Franklinton and the chief of the Franklinton Police Department, Lynn Armand, alleging unlawful failure to re-hire. (02–3392). The Court consolidated these matters for discovery purposes because they involve similar facts. (Rec.Doc. Nos.5, 36).

Plaintiffs in the main suit (hereinafter "*Smith* suit") allege that the Defendants unlawfully terminated them in violation of their First Amendment rights to free speech, to petition the government for redress of grievances, and their constitutional property right to enjoy public employment. They brought their action under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and La. R.S. § 51:2256. Plaintiff in the consolidated suit (hereinafter "*Dufrene* suit") claims that he was unlawfully denied re-employment by the Franklinton Police Department. He brought his action under 42 U.S.C. § 1983, the Fair Labor Standards Act, and La. R.S. § 51:2256.

On March 2, 2004, the Defendants filed respective motions for summary judgment against all six Plaintiffs in both actions. The parties came before the Court for oral argument on the Defendants motions on March 19, 2004. The Court took the matter under submission and now issues its rulings.

## I. BACKGROUND

This matter stems from an earlier lawsuit filed in this Court on July 10, 2000, by Rachel Smith against the Town of Franklinton, Lynn Armand, and Charles Brumfield. (Hereinafter "2000 lawsuit"). In that suit, Smith claimed that, as a matter of policy, female officers in the Franklinton Police Department (FPD) were restricted to performing clerical work and/or dispatching duties. Smith was the first female hired for duty as a regular police officer or "road deputy" with the FPD in May 1998. After she was hired, Smith alleged that she began to suffer harassment in her employment at the hands of Deputy Sheriff Brumfield. Smith eventually claimed damages for emotional distress, mental anxiety, loss of reputation, and humiliation, as well as remedies under § 1983 and wage claims under the Fair Labor Standards Act (FLSA). In the course of litigating the matter, Smith obtained sworn statements from W. Jones and Dufrene.

Furthermore, W. Jones, Dufrene, and Stogner became additional party plaintiffs in Smith's FLSA claim, alleging that they worked more than 40 hours per week but were not adequately compensated as provided by the FLSA, 29 USC § 206(a)(1). W. Jones, Dufrene, and Stogner were also listed as witnesses who would support all of Smith's claims.

In May 2001, Smith, W. Jones, Dufrene, and Stogner entered into a settlement with Franklinton, Chief Armand, and Assistant Chief Brumfield, which disposed of all the issues. Soon after the settlement, the Plaintiffs claim that Brumfield was demoted and thereafter resigned employment from the FPD. Plaintiffs were re-employed

by the Washington Parish Sheriff's Office either by Duane Blair, at the time Sheriff of Washington Parish, or by Acting Sheriff Scott Blair, who replaced him.

In November 2001, Washington Parish held an election for a new Sheriff. It is undisputed that the election was very heated, with negative campaigning on both sides. The Plaintiffs all publicly supported and participated in the election efforts of the incumbent, acting Sheriff Scott Blair. However, Blair was defeated by the challenger, Aubrey Jones. Jones' election was considered an upset as a "Blair" had been sheriff in Washington Parish for at least a generation.

Plaintiffs allege that Brumfield actively supported and was politically connected to Aubrey Jones. According to Plaintiffs, Brumfield made a deal with Aubrey Jones that in return for his support, he would be installed as Chief Criminal Deputy and that Smith, W. Jones, Dufrene, and Stogner would be fired. Plaintiffs claim that Brumfield blamed Smith, W. Jones, Dufrene, and Stogner for costing him his job with the FPD. Aubrey Jones was elected on November 17, 2001. Aubrey Jones did not recommission the Plaintiffs and installed Brumfield as Deputy Sheriff in August, 2002.

## I. LOUISIANA REVISED STATUTE SECTION 51:2256

■ Four of the *Smith* Plaintiffs (Smith, Stogner, Jones, and Dufrene) and Plaintiff Dufrene in his individual suit assert causes of action for retaliatory discharge under state law, La. R.S. § 51:2256. As a preliminary matter, the Court asked

the parties to address whether there is still a cause of action for retaliatory discharge under La. R.S. § 51:2256 following the 1997 amendments to Chapter 51. To put this matter in perspective, a review of the Human Rights Act is appropriate.

In 1988, the Louisiana legislature enacted the Louisiana Human Rights Act (the "Act") and created the Louisiana Commission on Human Rights (the "Commission") to enforce the Act. La. R.S. § 51:2231, *et seq.* (2003).[1] As part of its original charge, the Commission was granted statutory authority to address allegations of unlawful discriminatory practices in employment. *See* La. R.S. §§ 51:2242–2245, (*repealed* by Acts 1997 No. 1409, § 4, effective August 1, 1997).[2] The legislature also included a broad anti-retaliation provision in the Act, making it unlawful,

[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter.

§ 51:2256.

However, in 1997, the Louisiana legislature sought to create a new piece of legislation that would consolidate all of the state's employment discrimination law into one, comprehensive chapter. La. R.S. § 23:301, historical and statutory notes. Thus, pursuant to Acts 1997 No. 1409, §§ 51:2242–2245 were repealed and replaced by the new Louisiana Employment Discrimination Law. La. R.S. §§ 23:301, *et seq.*[3]

---

1. Enacted in Louisiana Acts 1998 No. 886.

2. Prior to the amendments, the Louisiana Human Rights Act made it unlawful for an employer (§ 51:2242); labor organization (§ 51:2243); employment agency (§ 51:2244); or apprenticeship or training program

(§ 51:2245) to discrimination against an individual based on race, creed, color, religion, sex, age, disability, or national origin.

3. The amended Human Rights Act makes unlawful discriminatory practices in public accommodations and advertising public accom-

The question before the Court is whether or not the anti-retaliation provision set forth in § 51:2256 continues to apply to employment discrimination after the 1997 revisions.

The Plaintiffs argue that § 51:2256 continues to apply to employment discrimination. In support of their argument, the Plaintiffs advance three related theories based upon their interpretation of the legislature's intent in making the revisions. First, relying on *Miller v. Am. Gen. Fin. Corp.*, 2002 WL 2022536 (EDLA 2002), the Plaintiffs observe that, in addition to repealing the substantive sections dealing with employment discrimination, the legislature added the following two definitions to the Human Rights Act as part of the 1997 amendments:

§ 2232. Definitions

As used in this Chapter:

. . . . .

(12) "Discriminatory practice in connection with employment" means an employment practice prohibited by R.S. 23:312, 323, or 332.

(13) "Unlawful practice" means a discriminatory practice in connection with employment, a discriminatory practice in connection with public accommodations, or any other practice prohibited by this Chapter.

La. R.S. § 2232(12), (13). Since the added definitions refer generally to employment discrimination and specifically to Chapter 23, Plaintiffs argue that Chapter 23 is incorporated by reference into the Human Rights Act, effectively becoming part of "this Chapter" as required under § 51:2256.

Second, Plaintiffs argue that the new Employment Discrimination Law does not contain a broad anti-retaliation provision that applies to all forms of discrimination prohibited under the law. Rather, the legislature included specific anti-retaliation provisions in the sections addressing age discrimination (§§ 23:311–314) and sickle-cell trait discrimination (§§ 23:351–354). Parallel provisions do not appear in the sections addressing disability (§§ 23:321–325.); race, color, religion, sex, and national origin (§§ 23:331–334); or pregnancy, childbirth, and related medical conditions (§§ 23:341–342). Plaintiffs note that if § 51:2256 no longer applies in the employment discrimination context, then the only Louisiana statute making it unlawful for employers to retaliate against persons who oppose discrimination in employment based on the above categories has been eliminated. Clearly, the Plaintiffs argue, the legislature did not intend to eliminate such a cause of action from state law. Had they so intended, according to the Plaintiffs, they would not have included two new definitions regarding employment discrimination in the Act.

Third, the Plaintiffs cite one of the stated purposes of the legislature in passing the Human Rights Act. Section 51:2231(A) of the act provides that one of the goals of the Act was to have Louisiana recognized as a deferral state under federal law and under the rules and regulations of the United States Equal Employment Opportunity Commission. Plaintiffs argue that if § 51:2256 no longer prohibits retaliation against those who oppose discriminatory employment practices, then Louisiana would no longer be a deferral state. Again, Plaintiffs claim that the legislature could not have intended such a consequence to flow from the 1997 amendments.

During oral argument, Defendants maintained that the legislative intent was

modations (§§ 51:2247, 2248); against breast-feeding mothers (§ 51:2247.1); by financial institutions in providing financial services (§ 51:2254); and in credit transactions (§ 51:2255).

clearly to remove employment discrimination from the purview of § 51:2256 when it repealed § 51:2242 from the Act and created the new Louisiana Employment Discrimination Law. The plain language of § 51:2256 restricts its application to "this Chapter," that is, the Human Rights Act. As the substantive employment discrimination provisions were removed from the Act, § 51:2256 is inapplicable.

The Court agrees with the Defendants. In the new Employment Discrimination Law, the legislature included anti-retaliation provisions in the sections addressing age and sickle-cell trait discrimination. Had the legislature intended to include parallel provisions in the other sections, they would have done so. There is no evidence to support the contention that the legislature intended § 51:2256 to apply to some sections of the new Employment Discrimination Law and not to others, simply by virtue of the fact that some sections do not contain anti-retaliation provisions. On the contrary, the fact that some sections do contain such provisions indicates that the legislature intended not to include similar provisions in the other sections. This interpretation is buttressed by the fact that the sections specifically addressing employment discrimination in the Human Rights Act were repealed. And the inclusion of definitions pertaining to employment discrimination in a statute in which substantive employment discrimination provisions were repealed does not create causes of action: it simply creates confusion.

What is clear to the Court, however, is that as a matter of law, § 51:2256 no longer applies to unlawful employment discrimination. The Court does not disagree with the gravamen of the Plaintiffs' arguments: that is, that the absence of a broad anti-retaliation provision in the employment discrimination context is regressive social policy and illogical. However, the new Employment Discrimination Law does not contain such a provision. Whether or not this absence is the result of drafting errors is not for the Court to determine. It is well established in matters of statutory interpretation, that courts begin with the plain language and structure of the statutes. *Coserv Ltd. Liability Corp. v. Southwestern Bell Telephone Co.*, 350 F.3d 482, 486 (5th Cir.2003). When the language is clear, as it is in this case, the court looks no further to divine the intent of the legislature.

Accordingly, the Court concludes that liability under La. R.S, § 51:2256 is limited to retaliation against practices made unlawful under the Louisiana Human Rights Act and does not extend to provisions repealed from that Act and now incorporated into La. R.S. § 23:302. *Hollister v. Gallagher*, 2004 WL 224547 (EDLA 2003); *Anderson v. Guste Homes*, 2004 WL 224567 (EDLA 2004); *Johnson v. Integrated Health Services, Inc.*, 2002 WL 31246762 (EDLA 2002).

Thus, the claims brought under § 51:2256 are hereby DISMISSED from both civil action 02–3385 and civil action 02–3392.

## II. CONSOLIDATION

On December 13, 2002, the Court consolidated the two instant matters pursuant to Federal Rule of Civil Procedure 42(a). The Court consolidated the matters because it found that they arose from common questions of fact and law. The Court re-visited the consolidation issue at a status conference with the parties on September 22, 2003. At that time, the Court decided that the cases would remain consolidated for discovery purposes, but that the issue could be considered again before the trial. *See* this Court's Minute Entry dated September 22, 2003 at Rec. Doc. No. 36.

At the oral argument held on March 19, 2004, the Court found that the likelihood of jury confusion and prejudice to the Defendants outweighed any benefits in keeping the matters consolidated. Accordingly, the Court, *sua sponte*, ordered that the matters be DE–CONSOLIDATED.

### III. MOTIONS FOR SUMMARY JUDGMENT

On March 19, 2004, the Court heard oral argument on the respective Defendants' motions for summary judgments in the *Dufrene* suit and the *Smith* suit. The Court shall consider the motions in the now de-consolidated actions in turn.

### A. Legal Standards

In determining whether a party is entitled to summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Littlefield v. Forney Indep. School Dist.*, 268 F.3d 275, 282 (5th Cir.2001) (*citing Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998)). Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ.P. 56. If the moving party fails to meet its initial burden of demonstrating the absence of a genuine issue of material fact, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.* 37 F.3d 1069, 1075 (5th Cir.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, if the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir.1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence leads to only one reasonable conclusion, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. The *Dufrene* Suit, 02–3392

On November 12, 2002, Dufrene filed a separate suit against the Town of Franklinton (Franklinton), Lynn Armand in his individual and official capacity as chief of police, and Columbia Casualty Company, Franklinton's insurer. Dufrene claimed that he was unlawfully denied re-employment with the Franklinton Police Department (FPD) in violation of the Fair Labor Standards Act and 42 U.S.C. § 1983. At oral argument, Dufrene moved to withdraw his § 1983 claim. The Court GRANTED Dufrene's motion. Accordingly, Dufrene's only remaining claim is under the Fair Labor Standards Act (FLSA).

In their motion, the Defendants move the Court to dismiss Dufrene's claim because he has produced no competent summary judgment evidence of retaliation. For the following reasons, the Court grants the Defendants' motion for summary judgment.

### 1. Factual Background

Dufrene was hired as a full-time police officer with the FPD on February 27, 1990. He continued his employment with the FPD until May of 1999. The Plaintiff claims that during his tenure with the FPD he was promoted to the position of sergeant, shift supervisor. It was in this capacity that he worked with Rachel Smith, the main plaintiff in the 2000 lawsuit. Dufrene joined as a Plaintiff in the 2000 lawsuit, asserting a claim against the

FPD under the Fair Labor Standards Act. Dufrene also provided an affidavit in support of Smith's gender discrimination and harassment claims.

Dufrene resigned from the FPD in May 1999. He claims that he resigned because he could no longer tolerate Brumfield's actions and because he believed he would eventually be fired by Brumfield. After he left the FPD, he was hired by the Washington Parish Sheriff's Office.

The facts surrounding Dufrene's termination by the Washington Parish Sheriff's Office are the subject of civil action 02–3385. The Court will address those facts and the summary judgment motions below.

In regards to the instant suit, Dufrene attempted to be re-hired by the FPD after his termination from the Sheriff's Office. The Plaintiff has alleged that he was not re-hired by the Franklinton Police Department because of his involvement in the 2000 lawsuit. The Plaintiff argues that this failure to re-hire was done in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

The Defendants argue that Dufrene's claim should be dismissed because he has not made a *prima facie* showing of retaliation. The Defendants claim that the earlier suit had nothing to do with the decision not to re-hire him. In support of their claim, the Defendants state that the FPD rehired four people who were either co-plaintiffs or offered affidavits in support of the 2000 lawsuit. Additionally, the Defendants advance other, non-discriminatory reasons for not rehiring Dufrene. Specifically, the Defendants claim that following the election for Washington Parish Sheriff, the FPD received numerous applications for employment from people with law enforcement experience. The decision not to hire Dufrene was allegedly based on his past employment with the FPD. The Defendants claim that Dufrene talked down to people and was rude to members of the public, dispatchers, and other officers, all of whom complained about Dufrene's conduct. Additionally, the Defendant's claim that Dufrene was disrespectful toward Armand and other town officials during his tenure with the FPD.

Furthermore, the Defendants state that Lynn Armand cannot be held individually liable because, as the police chief, he does not have the power to hire police officers. Rather, police officers are hired by the Franklinton Council based upon a recommendation by the police commissioner, who is also one of the elected Franklinton Council members. In this case, John Daniel was the police commissioner and the Council member charged with recommending hires to the FPD. The Defendants claim that Daniel reviewed all of the applications, including Dufrene's, and made the hiring recommendations to the Town Council. Daniel did consult with Armand, but claims that Armand did not in any way influence his decision regarding Dufrene's application.

## 2. Analysis

The parties do not dispute that an FLSA retaliation plaintiff must prove the same elements as would be required under a Title VII claim. Under both acts, the burden of proof shifts from one party to the other. The United States Supreme Court first established this burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and more recently reiterated and explained it in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Through the burden-shifting analysis, the court employs a three-part test to determine a defendant's motivation in taking the challenged action.

First, the plaintiff must establish a *prima facie* case. In a retaliation case,

the plaintiff must establish a prima facie case by demonstrating that:

(1) he is engaged in a protected activity;

(2) an adverse employment action occurred; and

(3) a causal link exists between the protected activity and the adverse action.

*Pineda v. United Parcel Ser., Inc.*, 360 F.3d 483, 486–87 (5th Cir.2004).

■ Once the plaintiff makes a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the employment action. If the defendant meets this burden, then the burden shifts back to the plaintiff, who must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. In the Fifth Circuit, in retaliation cases, where the defendant has proffered a nondiscriminatory purpose for the adverse employment action, the plaintiff must show that "but for" the discriminatory purpose, he would not have been terminated. *Pineda*, 360 F.3d at 486–87.

■ In this case, Dufrene makes a prima facie showing. First, he was engaged in a protected activity: namely, exercising his right to petition the government for redress of grievances. Second, an adverse employment action occurred: he was not re-hired by the Franklinton Police Department. Third, the Plaintiff can articulate a causal link between the fact that he participated in a lawsuit against the FPD and the fact that he was denied re-employment with the FPD.

■ The Defendants in this case have also propounded legitimate, non-discriminatory reasons for not re-hiring the Plaintiff. According to the Defendants, the Plaintiff was not a good employee and cites ample evidence to support their position. As the Defendants were under no obligation to re-hire the Plaintiff, this reason satisfies their burden. Thus, the Plaintiff

must show that this reason is merely a pretext for the discriminatory purpose. To satisfy this burden, the Plaintiff must show that "but for" the discriminatory purpose, he would have been re-hired. Said another way, the Plaintiff must show that but for his participation in the lawsuit, he would have been re-hired.

■ The burden-shifting analysis imposes a heightened showing in the area of causation. Dufrene has simply not made this showing. Viewing the evidence in the light most favorable to the Plaintiff, he has not shown that the legitimate reasons advanced by the Defendants are merely a pretext. As stated above, the Defendants were under no obligation to re-hire Dufrene. Defendants produced evidence supporting their position that Dufrene was not an employee that they wanted back based on his prior work history with the FPD. Dufrene argues that he was not re-hired due to his involvement in the 2000 lawsuit. However, his allegations are undermined by the fact that several other people who were involved in varying degrees in the 2000 lawsuit were rehired by the Franklinton Police Department. At oral argument, Plaintiff stated that Dufrene was more involved than other people in the lawsuit because he was Smith's supervisor. However, the Plaintiff has simply not provided sufficient evidence to support these allegations.

Accordingly, the Court GRANTS the Defendants' motion for summary judgment. Thus, the *Dufrene* suit, 02–3392 is hereby DISMISSED with prejudice. As such, the Defendants motion in limine is DISMISSED AS MOOT.

## C. The *Smith* Suit, 02–3385

### 1. Background

There are six Plaintiffs in the *Smith* suit. Four of the Plaintiffs (Smith, W.

Jones, Stogner, and Dufrene) claim they were discharged from the WPSO for their involvement in the 2000 lawsuit and for their support of Scott Blair in the sheriff's election. Two of the Plaintiffs (Thomas and Daniel) were not involved in the 2000 lawsuit and claim that they were terminated for their participation in the sheriff's election.

## A. Rachel Smith

Smith was the main plaintiff in the 2000 lawsuit. She alleges that, after being forced to leave the FPD in 2000, she was offered a position with the WPSO in June of 2001 as a juvenile detective and as a certified instructor in the Drug Abuse Resistance Education (DARE) program under acting sheriff Scott Blair. Smith actively campaigned for Scott Blair in the sheriff's election. Smith claims that after Jones was elected, he organized employment meetings with all WPSO employees to discuss future employment under this administration. Smith met with Jones on November 23, 2001. According to Smith, Jones expressed his concern with Smith's campaign activities and the 2000 lawsuit during their meeting. She claims that, though Jones acknowledge that she was a good employee, he terminated her.

## B. William Jones

W. Jones joined in the 2000 lawsuit with Smith, alleging a claim under the FLSA. W. Jones also executed an affidavit in support of Smith's claims of harassment and gender discrimination. He was also an active supporter of Scott Blair in the sheriff's election. Prior to the election, W. Jones worked for the WPSO in the criminal and narcotics division for approximately five (5) years. He claims that he was a good employee and had never received a reprimand. W. Jones's wife also worked for the WPSO. W. Jones claims that his meeting with Sheriff Jones was scheduled for November 26, 2001, but that, when he arrived for the meeting, the interview was never actually conducted. He claims that his wife was told during her interview that he was being terminated.

## C. William Stogner

Stogner joined in the 2000 lawsuit with Smith, alleging a claim under the FLSA. While he did not execute an affidavit, he was listed as a witness who would support Smith's claims. He was also an active supporter of Scott Blair in the sheriff's election. Stogner had worked at the WPSO since 1996 as an investigator and patrol officer. In 2000, Stogner was named Deputy of the Year. After the election, Stogner had an initial meeting with Jones during which he claims that Jones mentioned Stogner's role in the Blair campaign and indicated that he would need his supporters' blessings before he could re-commission Stogner. On November 26, 2001, Stogner again met with Jones. Allegedly, Jones informed Stogner that he would be terminated because Jones had promised one of his supporters that he would fire him.

## D. Michael Dufrene

Dufrene joined in the 2000 lawsuit with Smith, alleging a claim under the FLSA. He also executed an affidavit in support of Smith's claims of harassment and gender discrimination. He was also an active supporter of Scott Blair in the sheriff's election. Dufrene met with Jones on November 23, 2001. Dufrene claims that he was told by Jones that he would be terminated due to his involvement in the 2000 lawsuit.

## E. Michael Thomas

Thomas was not involved in the 2000 lawsuit with Smith. He was an active supporter of Scott Blair in the sheriff's election. Prior to the election, he was a shift supervisor. He claims that he was a

good employee and never received a reprimand. On November 26, 2001, Thomas claims that he "stuck his head" in the door of Jones's office and was told to leave the building and not come back. He alleges that he was terminated due to his active support of Scott Blair in the sheriff's election.

Thomas has also filed a defamation suit against Aubrey Jones, individually. The Defendants have not addressed the defamation suit in their motion.

## F. Michael Daniel

Daniel was not involved in the 2000 lawsuit with Smith. He actively supported Scott Blair in the sheriff's election. His involvement in the election campaign included writing radio, television, and newspaper advertisements for Blair and speaking to volunteer campaign workers to motivate them. Prior to the election, Daniel had worked at the WPSO for six years. He was the supervisor of the DARE program, was later promoted to director of community services, and ultimately was promoted to the position of Administrative Assistant and Computer Systems Administrator. Daniel claims that he was terminated due to his support of Blair in the election.

All six of the Plaintiffs assert a § 1983 claim for retaliation based on their First Amendment right to free speech, right to petition the government for redress of grievances, and their constitutional property right to enjoy public employment.

The four plaintiffs who were involved in the 2000 lawsuit (Smith, W. Jones, Stogner, and Dufrene) also allege causes of action under the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–3.

Before turning to an analysis of the merits of the motions, it is appropriate to address a point made by the Defendants in oral argument. Counsel for the Aubrey Jones and Charles Brumfield called the attention of the Court to the fact that prior to Jones's election a "Blair" had been sheriff in Washington Parish for over a generation. In his campaign, Sheriff Jones ran on a platform of change and promised that, if elected, he would "clean house." To allow the Plaintiffs to recover, counsel argues, would prevent the new sheriff from carrying out his campaign pledge and bringing about needed change. Although change is often good and, at times, necessary, it should occur within the bounds of the law. This is particularly true in this case, which involves the actions of the chief law enforcement officer in the Washington Parish.

The Court will first address the proper Defendants under Title VII and then discuss the substance of the motions as to Title VII and § 1983.

## 2. Proper Defendants under Title VII

■ The anti-retaliation provision of Title VII provides in pertinent part,

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.

It shall be an unlawful employment practice for any employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3. Section 2000e(b) defines "employer" as, "a person engaged in any industry affecting commerce who has fifteen or more employees for each working day ... and any agent of such a person...."

Smith, W. Jones, Stogner, and Dufrene bring their suit against both Aubrey Jones, individually and in his official capacity as the sheriff, and Charles Brumfield, individually and in his official capacity as the deputy sheriff. The Court must determine which, if either, of these Defendants is the employer for Title VII purposes. The Court must also determine in what capacity liability under Title VII attaches.

 It is well settled in the Fifth Circuit that there is no individual liability for employees under Title VII. *Smith v. Amedisys, Inc.* 298 F.3d 434, 448–449 (5th Cir.2002); *Indest v. Freeman Decorating, Inc.* 164 F.3d 258, 262 (5th Cir.1999). It is also well settled in this Circuit that Congress's purpose in extending the definition of any employer to encompass an agent was simply to incorporate the doctrine of *respondeat superior* liability into Title VII. *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir.1999).

 In this case, as sheriff, Aubrey Jones has the exclusive power to appoint, remove, and to fix the compensation and duties of sheriff's deputies. As this Court has noted, La. R.S 33:1433 provides a newly-elected sheriff statutory authority to commission the deputies serving in his administration. *Sbisa v. Strain,* C.A. No. 97–3464, 1999 WL 301697, *2 (E.D.LA. May 12, 1999). A sheriff's deputy is not subject to civil service, and his or her tenure expires with the sheriff's four-year term of office. *Dobson v. Strain,* C.A. No. 97–3463, 1999 WL 246652, *2 (E.D.LA. April 23, 1999). When a new sheriff is elected, deputies must be reappointed or recommissioned to retain their positions. *Id. (citing Soileau v. Zerangue,* 553 F.Supp. 845, 848 (W.D.La.1982)). As appointees, deputy sheriffs serve at the pleasure of the sheriff. *Sbisa,* 1999 WL 301697, *2 (citing Boyer v. St. Armant,* 364 So.2d 1338, 1340–41 (La.App. 4th Cir. 1978)). Thus, the Court finds that the sheriff, Aubrey Jones, qualifies as an employer for Title VII purposes. Further, the Court finds that Jones may be liable for the performance of wrongful acts in his official capacity, not individually. *See Oden v. Oktibbeha County, Mississippi,* 246 F.3d 458, 465, n. 6 (5th Cir.2001).

 The Plaintiffs also assert a Title VII claim against Charles Brumfield, individually and in his official capacity as deputy sheriff. There is no evidence before the Court establishing that Charles Brumfield qualifies as an employer under Title VII. In fact, Charles Brumfield is an appointee of the sheriff like any other deputy receiving a commission. As such, his actions may be imputed to Jones under the theory of *respondeat superior,* but he is not subject to liability as an employer.

Accordingly, the Court finds that Aubrey Jones in his official capacity as sheriff qualifies as an employer for Title VII purposes. The Title VII claims against Charles Brumfield, however, are hereby DISMISSED.

### 3. Analysis under Title VII and § 1983

The Court has recited the elements of a cause of action under Title VII above in its discussion of the *Dufrene* suit. The burden-shifting analysis employed under Title VII is also applied under § 1983. However, the prima facie showing under § 1983 is different from Title VII.

 All six Plaintiffs assert a § 1983 claim for retaliation for the exercise of their First Amendment rights to free speech, the right to petition the government for redress of grievances, and their constitutional property right to enjoy public employment. To make a *prima facie* showing for a First Amendment retaliation claim, the Plaintiffs must satisfy four elements.

(1) The Plaintiffs must suffer an adverse employment decision;

(2) The Plaintiffs' speech must involve a matter of public concern;

(3) The Plaintiffs' interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency; and

(4) The Plaintiffs' speech must have motivated the Defendants' action.

*Harris v. Victoria Independent School Dist.*, 168 F.3d 216, 220 (5th Cir.1999).

■■■ As with Title VII, if a plaintiff establishes a prima facie case, then the burden shifts to the Defendants to show a legitimate, nondiscriminatory reason for the discharge. If the Defendant produces sufficient evidence to support a nondiscriminatory explanation for its decision, then the Plaintiff is afforded an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the Defendant were not its true reasons, but merely a pretext.

This case is laden with facts. Every plaintiff has his/her own story to tell as it relates to the issues at hand. The Court need not discuss each and every fact at issue. The Court has considered all of the evidence and finds that all of the Plaintiffs in the *Smith* suit established a *prima facie* case under § 1983 and that Smith, W. Jones, Stogner and Dufrene establish a *prima facie* case under Title VII.

■■■ In regards to a prima facie showing under § 1983, all six Plaintiffs have shown that:

(1) They were each affected by adverse employment decisions: namely, they were not recommissioned as deputies under Sheriff Jones;

(2) They all participated in a campaign against Sheriff Jones's election, thereby exercising their First Amendment speech rights in support of a candidate;

(3) Four (4) of the Plaintiffs participated in the 2000 lawsuit;

(4) Their speech regarding the subject matter of the 2000 lawsuit and the political campaign involve matters of public concern, such as facts supporting allegations of the Franklinton Police Department's policy of gender discrimination and speech involved in supporting one's choice for political office;

(5) The Plaintiffs' interest in speaking out on these matters outweighs the Defendants interests in promoting efficiency.

■■■ In regards to a prima facie showing under Title VII, the four Plaintiffs involved in the 2000 lawsuit (Smith, W. Jones, Stogner, and Dufrene) have shown that:

(1) They were engaged in a protected activity: namely, exercising their First Amendment rights; and

(2) An adverse employment action occurred when their employment was terminated.

Furthermore, at the *prima facie* stage, all of the Plaintiffs have established a causal link between their termination and their participation in protected activities.

■■■ The Court also finds that the Defendants have met their burden of providing sufficient evidence to support nondiscriminatory reasons for its decision. The Defendants allege that they terminated the respective Plaintiffs based on legitimate business reasons, such as past work history, quality of work, relations with co-workers and members of the community, personal attacks made against Jones, and a concern that the respective Plaintiffs would not accept the authority of Jones. The Court also notes that the Defendants were under no obligation to retain the plaintiffs as deputies. *Soileau v. Zerangue*, 553 F.Supp. 845, 848 (W.D.La.

1982). As stated above, the tenure of a deputy expires upon the election of a new Sheriff. A sheriff, however, cannot refuse to appoint a deputy merely because that deputy did not support him in the election or in retaliation for opposing employment discrimination. To do so would constitute an infringement of the First Amendment.

Thus, the real issue in the case is whether or not the offered nondiscriminatory reasons are merely pretexts. At the summary judgment stage, the Court must determine if the Plaintiffs have produced enough evidence to support their contention that material facts remain concerning the motivation behind the terminations.

### 4. Plaintiffs Smith, W. Jones, Stogner, Dufrene, and Thomas

█ The Court finds that the suit as it pertains to Plaintiffs Smith, W. Jones, Stogner, Dufrene, and Thomas is not ripe for summary judgment. At the summary judgment stage, the Court does not resolve factual discrepencies, but determines whether material facts are in dispute. In this case, the Plaintiffs provide evidence disputing each and every allegation, point-by-point, advanced by the Defendants in support of the terminations. The evidence submitted to the Court presents completely different versions of the facts. The allegations made by the Defendants concerning the past work history of some of the Plaintiffs and the offensive and inflammatory behavior of others may well prove legitimate at a later stage in the proceedings. Further, Sheriff Jones's desire to institute change at the WPSO may be admirable, however, the law does not protect the machiavellian idea that the ends justify any means. The character of the means employed by Sheriff Jones is at issue and remains unresolved.

Thus, the Defendants' Motion for Summary Judgment as to Plaintiffs Smith, W. Jones, Stogner, Dufrene, and Thomas are hereby DENIED.

### 5. Plaintiff Michael Daniel

█ The Court reaches a different conclusion as to Plaintiff Michael Daniel. In their motion, the Defendants claim that Daniel is exempt from bringing suit under the "personal staff exception" to § 1983. Under this exception, if a particular employee qualifies as part of an outgoing public employer's "personal staff," then the incoming employer is generally immune from discrimination claims. *See Gunaca v. State of Texas*, 65 F.3d 467, 470 (5th Cir.1995); *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir.1985).

The Court need not determine whether or not Daniel qualifies as "personal staff" in this case because the Court finds that the Defendants have waived this defense. The Fifth Circuit has held that the personal staff exception is an affirmative defense that must be pleaded under Federal Rule of Civil Procedure 8(c). *Oden v. Oktibbeha County, Mississippi*, 246 F.3d 458, 467 (5th Cir.2001). The Defendants failed to plead this defense.

█ However, this failure is not dispositive of the Defendants' motion as to Plaintiff Daniels. For the Court finds that, even though the personal staff exception is inapplicable, the Plaintiffs have failed to provide evidence rebutting the nondiscriminatory, legitimate business reasons for Daniel's termination advanced by the Defendants.

Even though the Defendants waived the personal staff exemption, the Court finds that Daniel was promoted to a high-ranking position under Scott Blair and received a higher salary than the other deputies on staff to reflect this position. Daniel admitted in his affidavit that he was promoted to the position of Administrative Assistant to

Scott Blair and Computer Systems Administrator.

Perhaps more importantly, however, Daniel admitted that in addition to serving as the Computer Systems Administrator, he was also hired on a contract basis to perform computer work. The Defendants maintain that Jones felt that this employment arrangement was inappropriate and precisely the kind of activity he promised to eliminate during his campaign. The Plaintiffs do not provide sufficient evidence to rebut this legitimate reason. Accordingly, the Defendants' motion for summary judgment as to Plaintiff Michael Daniel is hereby GRANTED.

## IV. CONCLUSION

For the foregoing reasons,

IT IS ORDERED that the claims under La. R.S. § 51:2256 are hereby DISMISSED.

IT IS FURTHER ORDERED that civil action number 02–3392 be DE–CONSOLIDATED from civil action number 02–3385.

IT IS FURTHER ORDERED that the Defendants Town of Franklinton and Lynn Armand's Motion for Summary Judgment in civil action number 02–3392 is GRANTED, and the action is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Title VII claims in civil action number 02–3385 are DISMISSED as to Defendant Charles Brumfield.

IT IS FURTHER ORDERED that the Defendants Aubrey Jones and Charles Brumfield's Motions for Summary Judgment as to Plaintiffs Rachel Smith, William Jones, William Stogner, Michael Dufrene, and Michael Daniel are DENIED.

IT IS FURTHER ORDERED that the Defendants Aubrey Jones and Charles Brumfield's Motion for Summary Judgment as to Plaintiff Michael Daniel is GRANTED, and the action is DISMISSED with prejudice.