# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

––––––––––

No. 99-30040

––––––––––


**JOHNNY WADE HOWE**,

Individually and on behalf of Courtney Howe,

Plaintiff-Intervenor Defendant-Appellant

VERSUS

**SCOTTSDALE INSURANCE CO.; ET AL.**

Defendants

**LOUISIANA STATE UNIVERSITY MEDICAL CENTER**

Intervenor Plaintiff-Appellee

––––––––––

Appeal from the United States District Court
for the Western District of Louisiana

––––––––––

March 2, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON, District Judge.[*]

1

ELDON E. FALLON, District Judge:

Johnny Wade Howe, on behalf of himself and his daughter Courtney Howe (hereinafter collectively referred to as "Howe"), sued the Louisiana State University Medical Center ("LSUMC") for a portion of their legal fees and costs of recovering damages from the defendants, Scottsdale Insurance Company ("Scottsdale"), General Motors Corporation, and Gordon Ira Schlafman. LSUMC, which treated Howe for injuries suffered in an automobile accident with Mr. Schlafman, argues that it is entitled to a full reimbursement from any damage award for the services it rendered without any reduction for a proportionate share of Howe's legal fees and costs. Because the district court correctly granted summary judgment for LSUMC, we affirm.

I.

Johnny Wade Howe and his young daughter Courtney Howe were injured in an automobile accident with Gordon Ira Schlafman on October 27, 1995. Following the accident, they were taken to LSUMC in Shreveport, Louisiana for treatment. The cost of treatment totaled $22,035.49.

On February 26, 1996, Howe filed suit against the defendants in the First Judicial District Court in Caddo Parish, Louisiana to recover damages suffered from the accident. The defendants removed the case on the basis of diversity jurisdiction to the Western District of Louisiana on March 4, 1996.

On June 12, 1998, Scottsdale, Schlafman's insurer, deposited $100,000, the limit of its insurance policy, into the Court's registry.

* District Judge of the Eastern District of Louisiana, sitting by designation.

On September 22, 1998, LSUMC moved to intervene in Howe's suit because it claimed an interest in the proceeds. The district court granted the motion, and LSUMC filed a complaint of intervention on September 29, 1998 asserting its medical lien privilege over the deposited funds for the amount of Howe's medical bills.

On October 8, 1998, LSUMC filed a motion for summary judgment seeking $22,035.49, the full amount of its medical lien, without any pro-rata reduction for the attorney's fees and costs incurred by the plaintiff. Howe opposed the motion arguing that LSUMC, as partial subrogee and/or co-owner, is responsible for its share of the expenses incurred in securing damages from the defendants.

On December 7, 1998, the district court granted LSUMC's motion for summary judgment finding that LSUMC did not owe any portion of attorney's fees or costs to the plaintiff and was entitled to recover the amount of its medical lien. Plaintiff subsequently appealed.

II.

Louisiana provides two statutory vehicles for its charity hospitals to recover the costs of treating patients injured by third parties.

First, the Louisiana legislature created a medical lien privilege which provides:

A health care provider, hospital, or ambulance service that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such health care provider, hospital, or ambulance service on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or

2

sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries . . . . The privilege of any attorney shall have precedence over the privilege created by this Section.

La. Rev. Stat. Ann. § 9:4752 (West 1999).

A charity hospital such as the LSUMC may also intervene in suits brought by the patient/plaintiff it treats.

Where a patient in any state supported or veterans administration hospital in the state has been injured by the negligence of another person other than his employer . . . and has a right of action for the recovery of compensatory damages against that person, the department . . . shall be subrogated to the right of action to the extent of reasonable charges for services rendered to the patient, in accordance with like charges in other first class hospitals, including physicians' and surgeons' fees.

*Id.* § 46:7. The statute further explains that "[a]ll proceedings for the recovery of any charges or fees due any charity hospital of this state . . . may be presented in any court of this state . . . in a direct action or by intervention, or by third opposition." *Id.* § 46:11.

Howe contends that this statutory framework makes LSUMC a legal subrogee or co-owner of the cause of action. Because LSUMC could have acted directly or indirectly as co-owner of a cause of action under La. R.S. § 46:6, *et seq.*, Howe argues that LSUMC should be responsible for its share of Howe's legal costs.

LSUMC insists that it did not exercise its subrogation rights in this case. Rather, LSUMC asserted its medical lien privilege pursuant to La. R.S. § 9:4752 and therefore does not owe Howe for his legal costs.

III.

The substantive law of this case is the law of Louisiana. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The issue is whether Louisiana law requires an apportionment of recovery costs between LSUMC and the appellants. We review this issue *de novo*. *See Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994). To determine Louisiana law on the apportionment of recovery costs, this Court should first look to final decisions of the Louisiana Supreme Court. *Id.*

If the Louisiana Supreme Court has not ruled on this issue, then this Court must make an "Erie guess" and "determine as best it can" what the Louisiana Supreme Court would decide. *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999); *id.* (quoting *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)).

In making an Erie guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance. *See Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998). Intermediate appellate courts of Louisiana are "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Labiche*, 31 F.3d at 351 (quoting *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

## A.

With these principles in mind, we turn to Louisiana jurisprudence. The Louisiana Supreme Court has not ruled on the issue of whether charity hospitals are required to contribute toward its patients' costs of recovering damages from tortfeasors. The Court most closely addressed this issue of cost-sharing in *Moody v. Arabie* when it considered the apportionment of legal costs in a workers' compensation suit. *See* 498 So. 2d 1081 (La. 1986).

In *Moody*, an injured worker who had received worker's compensation benefits brought suit against a third party tortfeasor. *See id.* at 1083. The worker's compensation carrier for the employer intervened to recover the amount of compensation paid to the worker. *See id.* The Court granted the recoupment by the worker's compensation carrier, but held that the carrier was obligated to pay a portion of the injured worker's recovery costs. *See id.*

The Court concluded that the employer and worker held co-ownership over a property right to recover damages from a third party. *See id.* at 1085. According to a theory of co-ownership, "each co-owner is responsible for his proportionate part of reasonable and necessary expenses and legal services that accrue to his benefit." *Id.* The costs of recovering from the third party tortfeasor, therefore, "are to apportioned between the worker and the employer according to their interests in the recovery." *Id.* at 1086.

Appellant argues that the cost-sharing rationale of *Moody* should apply to the present case because La. R.S. 46-6, *et seq.* makes LSUMC the co-owner of appellant's cause of action against a tortfeasor. As a co-owner of a cause of action, LSUMC should be responsible under *Moody* for a portion of the appellant's costs of recovery. Howe explains that this Court should extend the co-ownership principles of *Moody* beyond the worker's compensation arena because the Louisiana Supreme Court has already applied *Moody* to the case of an insurer. *See Barreca v. Cobb*, 668 So. 2d 1129 (La. 1996) (holding health insurer responsible for legal costs of plaintiff's recovery). Appellant further contends that the principles of equity and unjust enrichment require LSUMC to share in the costs of obtaining a recovery because La. R.S. § 9:4752 provides LSUMC with a right to claim a portion of Howe's recovery.

Appellee responds that *Moody* and its progeny are not applicable to LSUMC because it is not a co-owner of a cause of action against a tortfeasor. Therefore, the co-ownership responsibilities of *Moody* should not be applied to it.

Howe's reliance on *Barreca* is misplaced. In *Barreca*, the Louisiana Supreme Court applied the rationale of *Moody* to a health insurer because the insurer had a provision in its policy granting it "the right to assert the actions and rights of the plaintiff against the tortfeasor." *Id.* at 1131. Because the Court found that the insurer was contractually subrogated to the plaintiff and therefore a co-owner of the cause of action, it held the insurer responsible for a proportionate share of the recovery costs. *See id.* at 1132. In the present case, however, no explicit agreement or statute makes LSUMC the subrogee and/or co-owner of Howe's cause of action.

Because the Louisiana Supreme Court has not spoken directly on whether *Moody* should be extended to require charity hospitals seeking compensation for medical services to pay a share of a plaintiff's attorney fees and costs, we must make our best Erie guess as to how the Louisiana Supreme Court would decide this issue. The

4

role of this court is not "to create or modify state law, rather only to predict it." *St. Paul Fire & Marine v. Convalescent Services*, 193 F.3d 340, 345 (5th Cir. 1999). Because there is no Louisiana Supreme Court precedent on point, we seek guidance by looking to the precedents established by intermediate state appellate courts. *See Labiche*, 31 F.3d at 351.

B.

Four of the five intermediate appellate courts in Louisiana have refused to extend *Moody* to charity hospitals and have held that charity hospitals are not responsible for the costs of recovering damages from third party tortfeasors. *See Mena v. Muhleisen Properties*, 652 So. 2d 65, 69 (La. Ct. App. 5 Cir. 1995) (holding that a charity hospital seeking to enforce its medical lien privilege pursuant to La. R.S. § 9:4752 is not required to contribute to the costs of an injured person's recovery), *writ denied*, *Mena v. Muhleisen Properties*, 653 So. 2d 592 (La. 1995); *Nicholes v. St. Helena Parish Police Jury*, 604 So. 2d 1023, 1034, (La. Ct. App. 1 Cir. 1992) (refusing to apply *Moody* because specific statutes and not the general law of co-ownership govern the relations of a plaintiff and a charity hospital), *writ denied*, *Nicholes v. St. Helena Parish Police Jury*, 605 So. 2d 1378 (La. 1992); *Moore v. State for Louisiana State Univ. Medical Ctr.*, 596 So. 2d 293, 296 (La. Ct. App. 3 Cir. 1992) (holding that LSUMC does not co-own a cause of action against a tortfeasor when it exercises its privilege under La. R.S. § 9:4752 and therefore is not obligated to pay a portion of recovery costs), *writ denied*, *Moore v. State for Louisiana State Univ. Medical Ctr.*, 600 So. 2d 667 (La. 1992); *Charity Hosp. of Louisiana v. Band* 593 So. 2d 1392, 1394 (La. Ct. App. 4 Cir. 1992) (distinguishing *Moody* from the case of a charity hospital which has no independent right to seeks medical expenses from a tortfeasor), *writ denied*, *Charity Hosp. of Louisiana v. Band*, 600 So. 2d 645 (La. 1992).

We cannot disregard a plethora of precedent provided by the intermediate appellate courts of Louisiana when the appellant offers nothing to suggest why the Louisiana Supreme Court would decide this case differently. Accordingly, we make an Erie guess that the charity hospitals of Louisiana would not be required to contribute to the costs of recovering from a tortfeasor by the Louisiana Supreme Court.

Therefore, we find that the district court correctly granted summary judgment for LSUMC and affirm the judgement.

AFFIRMED.