**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 13, 2012

No. 11-30595

Lyle W. Cayce
Clerk

VERONICA GLOVER,

Plaintiff - Appellant

v.

MARILYN SMITH, in her official capacity as Acting Clerk of Shreveport City
Court; FRANCES MANISCALCO YOUNGBLOOD, Independent Executrix of
the Succession of Virginia Maniscalco Hester; R. Lee IRVIN, in his official
capacity; CHARLES KELLY, in his official capacity; RANDY COLLINS, in
his official capacity; PAMMELA LATTIER, in her official capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CV-978

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This appeal is from the grant of summary judgment in favor of the
Defendants-Appellees in an employment discrimination case. Plaintiff-
Appellant raises a procedural due process violation and federal and state
retaliation claims. Finding no reversible error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30595

## I.     BACKGROUND

The Shreveport City Court is comprised of four elected judges. Pursuant to statute, the judges appointed Virginia Hester (Hester) as the Clerk of the City Court. Hester had been serving as the Clerk since 1979. At the time of the instant proceedings, the following judges were serving on the court: Judge Collins, Judge Irvin, Judge Kelly and Judge Lattier.

In 1998, Plaintiff-Appellant Veronica Glover (Glover) began working for the Shreveport City Court as a deputy clerk. In 2002, Rebecca Payne (Payne) was Glover's supervisor and on two occasions documented Glover's attitude problem and/or failure to perform a requested task. Joann Howard (Howard) also completed a performance documentation, noting that Glover had an insubordinate attitude. Glover, Payne, and Howard are African-American.

In 2005, Rita Jackson (Jackson) became Glover's supervisor. Jackson's reviews of Glover from 2005 through 2007 indicate Glover was adequately performing her duties. On June 26, 2007, Jackson completed a performance documentation noting that Glover had been conducting duties for an outside job while on duty as a deputy clerk. Glover denied the accusation.

On July 2 & 17, 2007, Glover filed race discrimination and harassment complaints with the personnel department. Glover thereafter filed a complaint of race discrimination with the EEOC and a race discrimination and retaliation complaint with the Louisiana Commission on Human Rights. In August 2007, Glover's attorney wrote to the city attorney to make a complaint of harassment against Hester and Jackson. Glover claimed that she had been falsely accused of conducting personal business during court hours and had been retaliated against for making a complaint to personnel. Glover's attorney sent a similar letter to Judge Kelly on October 2, 2007. At some point, Glover accused Hester of working a secondary job during court hours.

2

No. 11-30595

In April 2008, Glover was standing at the security desk in the entrance to the court and talking to Deputy Marshal Isaac Brass about Charlie Caldwell's recent appointment as interim City Marshal. Glover told Brass that she had heard that Caldwell used drugs. At least part of that conversation was captured on surveillance video. After hearing the video, Marshal Caldwell made a complaint about Glover's remarks.

In late April, Glover began taking leave under the Family Medical Leave Act. While Glover was on leave, Hester and Judge Irvin made an inquiry with personnel as to whether Glover's statements about Marshal Caldwell were grounds for dismissal. Judge Kelly was included in this correspondence. Meanwhile, Hester drafted a termination notice. The director of personnel responded that dismissal based on her remarks may be seen as violating her First Amendment rights. Also, dismissal on that basis could trigger a retaliation claim, and the fact that Glover was on leave status was a concern. The director further advised Hester to consult legal counsel with respect to "[w]hether or not a termination can be made defensible on any ensuing issue."

Upon Glover's return to work on July 23, Hester did not terminate her but instead re-assigned her to a different division with the same pay grade. Hester began cautioning Glover's co-workers about going to lunch with Glover. Hester questioned Glover's co-workers regarding why Glover had accused her of selling shoes during court hours.

On January 14, 2009, Glover and a co-worker, Angela Clay (Clay), were involved in a heated verbal altercation. The next day, Clay reported the incident to Judge Irvin. Judge Irvin referred the matter to Hester, informing her that this incident constituted grounds to terminate Glover. Judge Kelly agreed, and Hester terminated Glover.

After Glover's termination, the judges met to review Hester's report and watch a surveillance video of the incident between Glover and Clay. Judge

No. 11-30595

Collins did not think Glover had been treated fairly.  The judges took a vote on reinstating Glover. Judges Collins and Lattier voted to reinstate Glover. Judges Kelly and Irvin voted to uphold the decision to terminate.  Pursuant to the court's policy, it takes three votes to reach a decision.  Because the judges' vote was split, Glover was not reinstated.

Glover filed suit in district court against Hester both in her individual capacity and her official capacity as clerk of court.  Since the filing of this appeal, a suggestion of death was made and the new clerk, Marilyn Smith, in her official capacity as Acting Clerk, has been substituted for Hester.  Glover also sued the city court judges in their official capacity.  Glover raised several claims under federal and state law, including retaliation for protected speech under the First Amendment, and violation of procedural due process.  Hester and the judges filed a joint motion for summary judgment.  Glover also filed a motion for summary judgment on the procedural due process claim.  Initially, the district court granted the defendants' motion for summary judgment, dismissing all claims except the procedural due process claim and denying Glover's motion for summary judgment. The defendants moved for reconsideration of the procedural due process claim, and the district court granted their motion, dismissing the remaining claim.  Glover now appeals.

II.    ANALYSIS

A.    Standard of Review

We review summary judgment de novo, using the same standards as the district court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). We view the evidence and all justifiable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

No. 11-30595

### B.    Procedural Due Process

Glover contends that she had a protected property interest in her employment.    In Louisiana, "[a]bsent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge."  *Tolliver v. Concordia Waterworks Dist. No. 1*, 735 So.2d 680, 682 (La.App. 3 Cir. 1999) (internal quotation marks and citation omitted).

Glover "bases her property interest upon a mutual understanding with the city court judges that [her] employment would not be terminated except for cause."  Glover points to the testimony of Judge Kelly and Judge Collins, which indicated that their practice was to dismiss for cause.  Based on this mutual understanding, Glover contends that a property interest arose that was protected by the procedural due process provisions of the Louisiana Constitution and the Fourteenth Amendment.

The Appellees admit that mutually explicit understandings can give rise to property interests under Louisiana law.  Indeed, "[e]xplicit contractual provisions or 'other agreements implied from the promissor's words or conduct in light of the surrounding circumstances' may also create property interests."  *Driscoll v. Stucker*, 893 So.2d 32, 42 (La. 2005) (quoting *Perry v. Sindermann,* 408 U.S. 593, 601-02 (1972)).  However, this Court has "held that when formal rules and informal understandings conflict, the formal rules control.  In other words, when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules."  *Staheli v. Univ. of Miss.*, 854 F.2d 121, 125 (5th Cir. 1988).

The Appellees point to the Shreveport City Court Employee Handbook, which provides that Glover's position was an unclassified employee position.  They further point to Glover's signature on an acknowledgment of receipt of the

handbook, which stated that she understood that "nothing in this document should be construed as creating any entitlement to any process described or in any way changing the 'at will' nature of non-classified employment." She further acknowledged that she understood she was "free to resign from my position with the Court at any time, just as the Court is able to terminate my employment at any time."

The Appellees also point to a statute, which provides in pertinent part: "The judge may appoint one or more deputy clerks to serve *at the pleasure* of the judge." La. R.S. § 1887 (emphasis added). In response, Glover points to the statute that provides the number of clerks and deputy clerks the judges of the Shreveport city court shall appoint. La. R.S. § 2086. Glover contends that because the statute that is specific to Shreveport does not contain the phrase "serve at the pleasure of the judge," the judges were free to modify her "at will" employment by imposing a cause requirement. This argument is unpersuasive. The district court correctly observed that § 2086 was simply a miscellaneous provision establishing the parameters of the Shreveport City Court but it did not change the "at will" status of deputy clerks. As such, although Glover may have created a fact issue with respect to existence of a mutual understanding with the city court judges about the procedures for job termination, that informal understanding directly conflicts with the explicit, formal policy governing her entitlement to the position of deputy clerk. The formal "at will" policy thus controls. *Staheli*, 854 F.2d at 125. The district court properly found that Glover did not have a property interest in her job and granted summary judgment on the procedural due process claim.[1]

---

[1] Glover argues that the district court erred in considering the reasons for her dismissal when it analyzed her state law procedural due process claim. We do not see any indication that the court improperly considered the reason for her dismissal in its analysis. Glover also argues that Hester did not have the authority to dismiss her and thus, her dismissal was a nullity in violation of her procedural due process rights. This argument is without merit

No. 11-30595

### C.    Retaliation Claims Based on Protected Speech

Glover contends that the district court erred in granting summary judgment on her claims of retaliation based on protected speech under the First Amendment.  To make a § 1983 claim for First Amendment retaliation, Glover must demonstrate:  (1) that she suffered an adverse employment action; (2) that she spoke as a citizen on a matter of public concern; (3) that her interest in the speech outweighed the government's interest in the efficient provision of public service; and (4) that the speech caused the adverse employment action.  *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007).

### 1.  Protected Speech Regrading Public Official

Glover contends that the district court erred in granting summary judgment on her retaliation  claim that her employers terminated her because of her protected speech that the City Marshal had used drugs.  The district court ruled that Glover had suffered an adverse employment action and that she was speaking as a citizen (not an employee) when she made the comments during a conversation with a friend.  However, the question whether her interest in the speech outweighed the government's interest in the efficient provision of public service gave the court "pause."  The court likened Glover's remarks to idle gossip as opposed to whistle blower speech.  Nonetheless, "out of an abundance of caution, the Court . . . assume[d] that Glover's interest in the speech outweighs the government's interests."

The district court ruled that the nine-month delay between Glover's protected comments and her discharge failed to show causation.  This Court has explained that "a time lapse of *up to four months* has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.3d 344, 354  (5th Cir. 2001) (internal quotation marks and

---

because, as set forth above, Glover has no property interest in her employment.

7

citation omitted) (emphasis added).  Accordingly, the district court was correct that under this Court's precedent, a 9-month interval would not support temporal causation.  *See, e.g., Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (five-month period alone insufficient to support inference of causal link).

The district court alternatively ruled that even assuming Glover had made a prima facie case, her claim would fail because Hester terminated her based on her altercation with a co-worker.  In other words, the court ruled that Glover had not shown that the Appellees' proffered nondiscriminatory reason was a pretext. We agree.  Once a plaintiff establishes a prima case of retaliation, the burden of production shifts to the employer to advance a legitimate,  non-discriminatory reason for the adverse employment action.  *Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008).  Here, the employers pointed to Glover's altercation at work with a co-worker.  Glover does not dispute that she had an altercation with a co-worker and has failed to raise a genuine issue of fact with respect to whether the proffered reason was pretext.

### 2.  Protected Speech Regarding Commercial Activity

On June 27, 2007, Glover was accused of conducting personal business during work hours.  On July 2, 2007, Glover submitted a complaint of racial discrimination with the City of Shreveport, alleging that although several other individuals, including Hester, were routinely conducting outside business during work hours, she was the only person targeted.  Glover also submitted a complaint alleging retaliation and discrimination with the EEOC on October 1, 2007.  On January 16, 2009, Hester terminated Glover.

The district court found an adverse employment action.  With respect to whether Glover spoke on a matter of public concern, the court, "out of a sense of caution and realizing that [Glover's] complaint implicates the misuse of government time and salaries the Court will find that [it] . . . is a matter of

public concern." The court also found that her interest in the speech outweighed the city court's interest in the efficient provision of services. Nevertheless, the district court ruled that because she was terminated a year and a half after filing the complaint she could not show that her speech caused her termination. As the district court noted, the Appellees were made aware of Glover's complaint shortly after she made it on July 2, 2007, and she was not terminated until January 16, 2009. The district court correctly found that Glover failed to carry her burden of causation with respect to this speech. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (explaining that a twenty-month lapse between employee's protected activity and adverse employment action indicates no causation).

### D.     State Law Retaliation Claim

Pursuant to Louisiana law, Glover also argues that the Appellees retaliated against her for filing a claim of racial discrimination in which she alleged that, although other individuals routinely conducted outside business during work hours, she was the only person written up. This state law claim of retaliation is the mirror image of the First Amendment retaliation claim discussed above in Section II.C.2.

The district court ruled that the anti-retaliation provision in Louisiana's Human Rights Act (LHRA) did not extend to employment discrimination claims addressed in the Louisiana Employment Discrimination Law (LEDL). Thus, because the court held that no cause of action for retaliation in the context of an employment discrimination exists under Louisiana law, it dismissed her state retaliation claim.

In 1988, the Louisiana legislature enacted the LHRA, La. R.S. § 51:2231, et seq., and also created the Louisiana Commission on Human Rights (Commission) to enforce the LHRA. *Smith v. Parish of Washington*, 318 F.Supp.2d 366, 371 (E.D. La. 2004). "As part of its original charge, the

commission was granted statutory authority to address allegations of unlawful discriminatory practices in employment." *Id*.; *see* §§ 51:2242-2245.  The LHRA contained the following anti-retaliation provision, which made it unlawful for employers:

> [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter.

§ 51:2256.

Subsequently, in 1997, the Louisiana legislature repealed §§ 51:2242-2245 and replaced those provisions with the LEDL, La. R.S. §§ 23:301, et seq.  *Smith*, 318 F.Supp.2d at 371.  The LEDL, however, "does not contain its own retaliation provision" in the context of racial discrimination.  *Lowry v. Dresser, Inc.*, 893 So.2d 966, 967 (La.App. 3 Cir. 2005).  Thus, the question is whether the anti-retaliation provision in the LHRA "continues to apply to employment discrimination after the 1997 revisions."  *Smith*, 318 F.Supp.2d at 372.

We have found no controlling precedent addressing the instant question. Because the Louisiana Supreme Court has not addressed this question, we must make an "*Erie* guess and determine as best [we] can what the Louisiana Supreme Court would decide." *Howe ex rel. Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 627 (5th Cir. 2000) (internal quotation  marks and citation omitted).[2]  "In making an *Erie* guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance." *Howe ex rel. Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 627 (5th Cir. 2000).  Louisiana's Third Circuit Court of Appeal has addressed the precise issue at hand.  *Lowry*, 893 S.2d 966.  Because there were no reported Louisiana

---

[2]  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

cases addressing the 1997 amendments, the Court of Appeal looked to federal cases. The Court of Appeal recognized a magistrate judge's ruling that the anti-retaliation provision in the LHRA continues to apply in the employment discrimination context because "the definition section of the [LHRA] still defines an 'unlawful practice' as 'a discriminatory practice in connection with employment.'" *Id.* at 967-68 (quoting *Miller v. American Gen. Fin. Corp.*, 2002 WL 2022536, at \*7 (E.D. La. 2002) (unpublished). The Court of Appeal then looked to Judge Fallon's decision in which he came to the opposite conclusion of the magistrate judge in *Miller. Smith v. Parish of Washington*, 318 F.Supp.2d 366, 371 (E.D. La. 2004). In a published opinion, Judge Fallon noted that the Louisiana legislature had included specific anti-retaliation provisions in sections of the LEDL addressing age discrimination and sickle cell trait discrimination; however, the corresponding sections addressing race, color, religion, sex, national origin, and pregnancy did not contain an anti-retaliation provision. *Smith*, 318 F.Supp.2d at 372. The district court opined that "[h]ad the legislature intended to include parallel provisions in the other sections, [it] would have done so." *Id.* at 373. Accordingly, Judge Fallon ruled that "as a matter of law, § 51:2256 no longer applies to unlawful employment discrimination." *Smith,* 318 F.Supp.2d at 373.

After quoting extensively from Judge Fallon's decision, the Louisiana Court of Appeal agreed with his conclusion and held that after the statutory amendments, the anti-retaliation provision in the LHRA does not apply to employment discrimination claims. *Lowry*, 893 So.2d at 968. Thus, the Court of Appeal held that the plaintiffs did not have a cause of action for retaliation. *Id.* We are persuaded by the opinion of the Louisiana Court of Appeal and likewise hold that the statute does not provide a cause of action for retaliation in the context of employment discrimination cases.

No. 11-30595

In any event, even assuming *arguendo* that the Louisiana Supreme Court would recognize a claim for retaliation, Glover is not entitled to relief. As explained above in Section II.C.2, Glover's mirror image claim for retaliation under federal law fails, and Louisiana courts analyze claims of racial discrimination in employment pursuant to Title VII standards. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). Therefore, assuming *arguendo* that Louisiana recognizes such a retaliation claim, because Glover's claim fails on the merits, the district court properly granted summary judgment in favor of the defendants.

### III.    CONCLUSION

For the above reasons, the district court's judgment is AFFIRMED.