ROBERT PITMAN, UNITED STATES DISTRICT JUDGE
*597 Before the Court are Plaintiff Nathanael Brown's ("Brown") Motion for Partial Summary Judgment, (Dkt. 31), Defendants Mid-America Apartments, LP and Mid-America Apartment Communities, Inc.'s (collectively, "MAA") Motion for Summary Judgment, (Dkt. 86), and the parties' responsive briefing to each. Having considered the parties' arguments, the evidence, and the relevant law, the Court will grant Brown's motion and deny MAA's.
I. BACKGROUND
This case concerns apartment late fees. Brown lived in an apartment owned by MAA from August 2013 until December 2016. (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 44, at 2-3). MAA merged with Post Properties, Inc. ("Post") in 2016. (Id. at 3). MAA then adopted Post's uniform late-fee policy, under which tenants are charged a fee equal to ten percent of their rent. (Id. at 3-4). Post had used this policy since 1997. (Defs.' Mot. Summ. J., Dkt. 86, at 7). Brown was assessed a ten percent late fee in December 2015. (Pls.' Mot. Summ. J., Dkt. 31, at 4). He alleges that the late fee was charged in violation of Texas Property Code § 92.019 (" Section 92.019"), which provides that:
A landlord may not charge a tenant a late fee for failing to pay rent unless ... the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent.
TEX. PROP. CODE § 92.019(a)(2). (Pls.' Mot. Summ. J., Dkt. 31, at 4). Brown and a class of similarly situated tenants (collectively, "Plaintiffs")[1] now seek summary judgment on the issue of MAA's liability under Section 92.019. (Id. at 3). MAA, meanwhile, seeks summary judgment in its favor by way of its own motion. (Defs.' Mot. Summ. J., Dkt. 86, at 2).
II. LEGAL STANDARD
Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." Poole v. City of Shreveport , 691 F.3d 624, 627 (5th Cir. 2012).
*598 The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. , 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Wise v. E.I. DuPont de Nemours & Co. , 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. Miss. River Basin All. v. Westphal , 230 F.3d 170, 175 (5th Cir. 2000).
III. DISCUSSION
Section 92.019 provides that "[a] landlord may not charge a tenant a late fee for failing to pay rent unless ... the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." TEX. PROP. CODE § 92.019(a)(2). Plaintiffs' theory of liability is straightforward: Section 92.019 requires a landlord to reasonably estimate his or her damages before charging a late fee, and MAA made no estimate at all. (Pls.' Mot. Summ. J., Dkt. 31, at 6, 14). MAA disputes both premises. MAA argues that Section 92.19 does not require landlords to conduct a prospective estimate of damages, but even if it does, there is a genuine issue of material fact concerning whether MAA conducted a reasonable prospective estimate. (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 44, at 2, 17).[2]
A. Construing Section 92.019
In a diversity action, the Court's task is to apply Texas law as interpreted by Texas state courts. Mid-Continent Cas. Co. v. Swift Energy Co. , 206 F.3d 487, 491 (5th Cir. 2000). To determine state law, the Court would ordinarily look to final decisions of the Texas Supreme Court or, in the absence of such decisions, to decisions of Texas' intermediate appellate courts for guidance. See Howe ex rel. Howe v. Scottsdale Ins. Co. , 204 F.3d 624, 627 (5th Cir. 2000). The parties have cited no Texas state court decisions interpreting Section 92.019, and the Court is aware of none. (See, e.g. , Defs.' Resp. Pl.'s Mot. Class Cert, Dkt. 29, at 15 n.10 (stating that "[t]he only reported case citing to [Section] 92.019 is Olley v. HVM, L.L.C. , 449 S.W.3d 572, 576 (Tex. App.-Houston 2014)"); Olley , 449 S.W.3d at 576 (rejecting an argument that Section 92.019 entitled a hotel guest to possession of his room, but not otherwise interpreting the statute) ). In the absence of state-court authority, the Court's "primary obligation is to make an Erie guess as to how the [Texas] Supreme Court would decide the question before" the Court. Keen v. Miller Envtl. Grp., Inc. , 702 F.3d 239, 243 (5th Cir. 2012). When making an Erie guess, the Court's task "is to attempt to predict state law, not to *599 create or modify it." Id. (citation and quotation marks omitted).
In order to properly predict the interpretation of a Texas statute, the Court "follow[s] the same rules of construction that a Texas court would apply-and under Texas law the starting point of [a court's] analysis is the plain language of the statute." Agenbroad v. McEntire , 595 F. App'x 383, 387 (5th Cir. 2014) ; see also Galbraith Eng'g Consultants, Inc. v. Pochucha , 290 S.W.3d 863, 867 (Tex. 2009) ("In construing statutes, the Court's "primary objective is to give effect to the Legislature's intent as expressed in the statute's language.") (citing TEX. GOV'T CODE § 312.005 ). "If the words of a statute are clear and unambiguous," then the Texas Supreme Court will "apply them according to their plain and common meaning." Id. (citing City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) ). "Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation." Sw. Royalties, Inc. v. Hegar , 500 S.W.3d 400, 405 (Tex. 2016). Words and phrases should "be read in context and construed according to the rules of grammar and common usage." Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n , 518 S.W.3d 318, 325 (Tex. 2017). "To determine a statutory term's common, ordinary meaning," the Texas Supreme Court "typically look[s] first to [the term's] dictionary definitions." City of Richardson v. Oncor Elec. Delivery Co. LLC , 539 S.W.3d 252, 261 (Tex. 2018).
Courts must strictly construe a penal statute such that any ambiguities are resolved in favor of the penalized party.[3] Hovel v. Batzri , 490 S.W.3d 132, 136 (Tex. App.-Houston [1st Dist.] 2016, pet. denied). In this context, "[s]trict construction ... does not mean that each individual term must be read narrowly. It means that, when a statutory provision is unclear, the statute is read in its entirety in a way that benefits the party facing the possibility of a penalty if a fair reading permits it." Id. The purpose of strictly construing penal statutes is to afford regulated parties with "fair notice" so that "the party upon whom [the statute] is to operate may with reasonable certainty ascertain what the statute requires to be done." Cain v. State , 882 S.W.2d 515, 519 (Tex. App.-Austin 1994, no writ).
The parties' dispute about how to properly construe Section 92.019 turns on the resolution of two issues. The first is temporal: Plaintiffs argue that Section 92.019 requires a landlord to estimate its late-payment damages before charging a late fee; Defendants see no such temporal requirement.[4] The second relates to how much work Section 92.019 imposes on *600 landlords: MAA argues that Section 92.019 does not require landlords to undertake a formal or documented process to estimate their late-payment damages; Plaintiffs respond that no such construction is necessary to find MAA liable given the evidence in this case.[5] The Court agrees with Plaintiffs on both issues.
Section 92.019 unambiguously requires at least two things from landlords. The first is that a landlord must attempt to calculate or evaluate its late-payment damages. Section 92.019 requires that a late fee be a "reasonable estimate." TEX. PROP. CODE § 92.019(a)(2). An estimate is "[a] tentative evaluation or rough calculation, as of worth, quantity, or size." THE AMERICAN HERITAGE DICTIONARY 609 (5th ed. 2011). To evaluate or to calculate is to do something -one must conduct some sort of analysis, even if imprecise or informal. It follows that an estimate must be the result of a process-the process of calculation or evaluation, even if imprecise or informal. For a late fee to be an estimate, it must therefore at least be the result of some attempt to calculate or evaluate the landlord's damages resulting from the late payment of rent.
The second requirement follows from the first. Section 92.019 states that a landlord "may not charge a tenant a late fee for failing to pay rent unless ... the fee is a reasonable estimate" of the landlord's late-payment damages. TEX. PROP. CODE § 92.019(a)(2). Under the statute's plain text, the thing charged must be an estimate. An estimate is the result of a calculation or evaluation. To be the result of a calculation or evaluation is to be preceded by that calculation or evaluation. For a late fee to be an estimate, it must therefore be preceded by a calculation or evaluation. The statute's second unambiguous requirement, in other words, is temporal: a landlord must attempt to calculate or evaluate its late-payment damages before charging a late fee.[6]
MAA argues that Section 92.019 contains no temporal requirement-that it requires "only that the estimate be 'reasonable' in the final analysis." (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 44, at 9). Under such a construction, a landlord could comply with Section 92.019 by charging an arbitrary late fee and then later calculating its late-payment damages to see if those damages reasonably approximate the arbitrary fee charged. Put another way, such a construction would permit a landlord to charge a fee that is not an estimate of anything. A figure chosen arbitrarily, even if it turns out to closely approximate a particular value after rigorous post hoc *601 analysis, is not an estimate of that value, because the figure was never the result of a calculation or evaluation. When the plain text of Section 92.019 bars a landlord from charging a late fee unless it is an estimate, the Court cannot construe the statute to permit a landlord to charge a late fee that is not an estimate.
MAA's principal argument addresses a question not at issue in this case. MAA argues that the Texas Legislature would have used different language if it had "intended landlords to undertake a formal process of estimation." (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 44, at 8; see also id. ("Had the Legislature intended to require landlords to engage in some type of formalized process prior to assessing late fees to their tenants, it easily could have done so."); see also Defs.' Mot. Summ. J., Dkt. 86, at 15 ("[A]ccording to Plaintiff, the statute bars the imposition of a late fee unless the landlord first undertakes a formal, documented process to prospectively estimate damages.") ). But Plaintiffs do not argue that Section 92.019 requires a formalized or documented process before charging a late fee or that MAA is liable because it failed to undertake a formalized or documented process. (Pls.' Reply Pls.' Mot. Summ. J., Dkt. 53, at 10). Plaintiffs argue that Section 92.019 requires landlords to conduct an estimate before charging a late fee, (Pls.' Mot. Summ. J., Dkt. 31, at 9), and that MAA is liable because it failed to consider "in any way, form, or fashion" its damages from late payment, (Pls.' Reply Pls.' Mot. Summ. J., Dkt. 53, at 10). Put another way, Plaintiffs' claim is not that MAA failed to conduct a reasonable estimate because they failed to follow a formal, documented process when estimating their late-payment damages. Instead, their claim is that MAA failed to conduct an estimate at all-reasonable or otherwise-because they failed to conduct any sort of calculation or evaluation of their late-payment damages before charging late fees to the class members. (Pls.' Resp. Defs.' Mot. Summ. J., Dkt. 93, at 9 n.8). Because this case turns on whether MAA conducted an estimate at all, the Court needs not consider the amount of procedure or sophistication of calculation required by Section 92.019 when conducting a reasonable estimate.[7]
B. Summary Judgment Evidence
Having concluded that Section 92.019 requires a landlord to estimate its late-payment damages before charging a late fee, the question then becomes whether a reasonable juror could find that MAA's predecessor, Post, calculated such an estimate before deciding that each tenant's lease would include a ten percent late fee.[8] Plaintiffs' position is that Post (and *602 therefore also MAA) never conducted any sort of estimate at all. (Pls.' Mot. Summ. J., Dkt. 31, at 14). MAA argues that it has presented sufficient evidence to show that Post conducted an estimate. (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 44, at 17; Defs.' Mot. Summ. J., Dkt. 86, at 7-8).
The Court agrees with Plaintiffs-there is no evidence sufficient to create a genuine issue of fact regarding whether Post ever conducted any sort of estimate at all, much less a reasonable one. MAA admits that they "do not have any knowledge as to when the 10% rent late fee was first implemented or the identity of the individual(s) who were involved in originally establishing the 10% rent late fee." (Resp. to Interrog. No. 5, Pl.'s Ex. 5, Dkt. 31-3, at 5). MAA admits that "documentation reflecting [the late fee policy's] origin [is] no longer available." (Resp. to Interrog. 8, Pl.'s Ex. 5, Dkt. 31-3, at 6). MAA's admissions are consistent with the deposition testimony of its corporate representative, Shannon Sear. (Sear Dep. Pl.'s Ex. 4, Dkt. 31-4). Sear does not know who made the decision to charge tenants a ten percent late fee or why the decision was made. (Id. at 45-46). These statements are evidence from which a reasonable juror could conclude that Post never conducted an estimate of its damages before setting its late fee policy.
In light of Plaintiffs' evidence, the burden falls on MAA to establish the existence of a genuine issue of fact for trial. To do so, MAA relies on several pieces of evidence. The first is Sear's statement that "Post had a strong knowledge of the industry, and they determined that ten percent was a reasonable percentage." (Id. at 46). However, after making that statement, Sear admitted that she has no personal knowledge of why Post decided to set the late fee at ten percent of a tenant's rent. (Id. at 46-47). Sears' reference to Post's industry knowledge simply supports her conjecture that someone must have determined that ten percent was a reasonable estimate of damages. However, "[t]estimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment," Lechuga v. S. Pac. Transp. Co. , 949 F.2d 790, 798 (5th Cir. 1992). Sear's conjecture is insufficient to raise a genuine issue of material fact regarding whether Post conducted an estimate of its damages before setting its late fee policy.
The second piece of evidence is a declaration submitted by Tom Wilkes, who served as Post's executive vice president and president. Wilkes avers that Post instituted its ten percent late fee policy in a number of Texas properties in 1997. (Wilkes Decl., Dkt. 87-9, ¶ 5). He goes on to aver that:
Post considered the processes it utilitized to collect rent from tenants. Post's property management teams typically spent a considerable amount of time pursuing unpaid rent, and Post determined that a late fee of ten percent of rent was an appropriate and reasonable amount for Post to recoup its costs and damages it incurred in the management and pursuit of late rent.
(Wilkes Decl., Dkt. 87-9, ¶ 6; see also Defs.' Mot. Summ. J., Dkt. 86, at 7). Nothing in Wilkes' declaration indicates how Post determined that a ten percent late fee was appropriate or reasonable in light of its late-payment damages. Wilkes' declaration is substantively equivalent to stating that "Post estimated its damages," which as a conclusory allegation is not competent summary judgment evidence. See Topalian v. Ehrman , 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations *603 are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."). Moreover, even supposing that Post did estimate its late-payment damages in 1997, there is no evidence that MAA made any effort to confirm that Post's 1997 estimate could fairly be considered to be an estimate of its late-payment damages-accounting for changes in corporate practices, technological progress, employee costs, and more-at the time it charged late fees to the class members at the beginning of the class period in 2013.[9]
MAA's only other evidence concerns its actual costs resulting from late payment of rent. First is a report prepared by an accounting firm showing that MAA's total late-payment costs were 110 percent of its total late fee revenue during the class period. (Defs.' Mot. Summ. J., Dkt. 86, at 18-19). Second is an expert report finding that late payment could have caused over $1 million in opportunity costs during the class period. (Id. at 9-10). Third is a declaration from Sear stating that Post incurred costs resulting from late payments in the form of personnel time spent reviewing late payment records, sending communications to tenants, and making in-person collection visits. (Resp. Mot. Summ. J., Dkt. 44, at 17-18). Neither the accounting study, the expert report, nor Sear's statement is evidence that anyone ever took steps to estimate Post's (or MAA's) late-payment damages before Post set its late fee policy. At most, these pieces of evidence might be relevant to the reasonability of such an estimate, if one was in fact made. But this testimony is not evidence that an estimate was actually made; as such, it is insufficient to raise a genuine issue of material fact regarding whether Post conducted an estimate of its damages before setting its late fee policy.
With no evidence from which a reasonable juror could find in favor of MAA, Plaintiffs are entitled to summary judgment in their favor on the issue of MAA's liability under Section 92.019.
IV. CONCLUSION
For these reasons, the Court ORDERS that Brown's Motion for Partial Summary Judgment, (Dkt. 31), is GRANTED. MAA's Motion for Summary Judgment, (Dkt. 86), is DENIED . This order does not resolve a number of outstanding issues, including the determination of class membership or damages.

Brown moved to certify a class of MAA tenants who were also charged a late fee under the same policy. (Mot. Class Cert., Dkt. 26, at 3). The Court granted that motion by adopting a report and recommendation that recommended certifying the class. (Order, Dkt. 97, at 16-17; R. & R., Dkt. 57, at 21). The class includes all tenants of Post-branded apartments (now owned by MAA) who were charged a ten percent late fee between April 10, 2013, and September 30, 2017. (See Order, Dkt. 97, at 17). As the magistrate judge and this Court found, MAA set the ten percent late fee in each class member's lease according to a standard policy. (Id. at 5; R. & R., Dkt. 57, at 8). Because the Court certified a class before deciding this motion and because MAA's liability is established on a classwide basis, the relief set forth in this order will apply classwide. The Court will therefore refer to the plaintiffs collectively, even though Brown filed this motion individually.

In its own motion for summary judgment, MAA inverts the argument: MAA contends that (1) Section 92.019 does not require a landlord to estimate its damages before charging a late fee, and (2) Plaintiffs have failed to create a fact issue concerning the reasonableness of MAA's late fee. (See Defs.' Mot. Summ. J., Dkt. 86, at 1-2). As discussed below, the Court disagrees with MAA's first premise and finds no evidence that it (or Post) estimated its late-payment damages before charging late fees to the class members. (See infra , at 3-11). Because MAA's motion for relief turns on the same issues as Plaintiffs', the Court finds that MAA has failed to meet its burden for the same reasons that Plaintiffs have met theirs.

Section 92.019 is a penal statute because it creates a penalty. Penalties "go beyond compensation" in order to punish or deter wrongdoers. In re Xerox Corp. , 555 S.W. 3d. 518, 530 (Tex. 2018). A statutory provision authorizing a civil penalty of treble actual damages is "essentially punitive even if [it has] compensatory traits." Id. at 532. A landlord who violates Section 92.019 is liable for the sum of (a) $100, (b) three times the amount of the late fee, and (c) the tenant's reasonable attorney's fees. Tex. Prop. Code § 92.019(c). Section 92.019's treble-damages provision, which goes beyond compensating tenants for paying the late fee they were charged, renders the provision a penalty before even considering the additional liability for a fixed sum and attorney's fees.

(See Pls.' Mot. Summ. J., Dkt. 31, at 6 ("[B]efore [landlords] may [set late fees], they must first estimate their damages that result from late payment of rent."); Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 44, at 9 ("[I]f the Legislature had intended to require landlords to conduct a 'prospective estimate' of their uncertain damages, it would have inserted that temporal requirement into § 92.019. But it did not; it required only that the estimate be 'reasonable' in the final analysis.") ).

(See Defs.' Mot. Summ. J., Dkt. 86, at 15 ("[A]ccording to Plaintiff, [Section 92.019 ] bars the imposition of a late fee unless the landlord first undertakes a formal, documented process to prospectively estimate damages."); Pls.' Resp. Defs.' Mot. Summ. J., Dkt. 92, at 9 n.8 ("Plaintiff is not arguing Section 92.019 requires a particularized 'formalized' process. Rather, the violation is that Defendants set their late fees to penalize late-payers without determining-in any way, form or fashion-what legal damages it would be able to prove up in the event it sued a tenant for breaching the lease agreement by paying, but doing so a few days late.") ).

MAA argues that this construction of Section 92.019"conflicts with mandated principles of strict statutory construction" because it "write[s] into [the] statute a provision when one simply does not exist." (Defs.' Mot. Summ. J., Dkt. 86, at 13). On the contrary, this construction draws conclusions compelled by the plain language of the statute. Strict construction only requires that the statute be read to benefit MAA if a provision is unclear. Hovel , 490 S.W.3d at 136. Whatever ambiguities may lie in Section 92.019's reasonableness requirement, there is no ambiguity in the statute's requirement that the fee be an estimate when it is charged and therefore that some analysis of the landlord's damages must precede the charging of a late fee.

While an estimate need not be the product of a formalized or documented process, it may be the case that Section 92.019's "reasonable estimate" requirement sets a floor on the informality or imprecision with which a landlord can estimate its damages from late payment. The Court need not decide where that floor lies in this case, because the resolution of Plaintiffs' motion turns on whether Section 92.019 requires a landlord to estimate his or her damages from late payment before charging a late fee, however informally or unrigorously, and whether MAA did anything to conduct such an estimate, however informal or unrigorous.

Post began implementing a ten percent late fee in 1997-well before the class period in this case. (Defs.' Mot. Summ. J., Dkt. 86, at 7). All of MAA's evidence that its ten percent late fee is the product of a reasonable estimate looks either to its current total fixed collection costs, (id. at 8-9), or to decisions made by Post employees before MAA acquired Post, (e.g., id. at 7). There is no evidence that Post or MAA conducted individualized damage estimates before charging any particular class member's late fee. Instead, the evidence establishes that the ten percent late fee is included in tenant's leases and assessed as a matter of policy, and that every tenant in a Post-owned property signed a lease with that late fee provision. (Sear Decl., Dkt. 30-2, ¶ 9).

The only evidence that Post revisited its decision to charge a ten percent late fee to all of its tenants after 1997 is a declaration from Post's former senior vice president, Glen Smith, who avers that he and local counsel reviewed Section 92.019 when it was enacted in 2007. (Smith Decl., Dkt. 87-3, ¶¶ 5-8). Smith "do[es] not recall recommending that the Post late fee be changed," but says that he would have recommended an adjustment if local counsel believed that the ten percent late fee policy violated Section 92.019. (Id. ¶ 8). Nothing in Smith's declaration provides evidence that Post estimated its late-payment damages in 1997, nor does it provide any evidence that Post estimated its damages in 2007 (or at any point thereafter).